HILL v. ATOKA COAL AND MINING COMPANY, *Appellant.*

In Banc, July 9, 1894.

1. **Corporation:** STOCK: STOCKHOLDERS. Officers of a corporation who issue to themselves stock, without paying anything therefor, or at an under valuation, may be compelled to account for the value of the stock actually received.

2. **Compromise**: CONSIDERATION. The compromise of an existing liability is a sufficient consideration to support a promise.

3. **Corporation**: STOCK: STOCKHOLDERS: ESTOPPEL. Where a corporation issues stock as fully paid up, it can not afterwards assert the contrary, though only a small proportion of the value was, in fact, paid.

4. ———: ———: ———: IMPLIED CONTRACT. A stockholder who receives stock at less than its par value does so under an implied agreement that, when the necessity arises and the amount required is ascertained, he will make such additional payments as the satisfaction of the claims of creditors will require.

5. ———: ———: ———: CONTRACT. A voluntary agreement among stockholders to pay a certain per cent. on the unpaid shares, for the satisfaction of the claims of its creditors; will enure to the benefit of the creditors and can be enforced by a corporation on the same principle which authorizes it to enforce a valid agreement to subscribe for stock, made before the organization is effected.

6. ———: ———: VOLUNTARY SURRENDER OF STOCK. A voluntary surrender of stock by the holder, if assented to by the corporation. will be effectual and will release the withdrawing member from liability for debts thereafter created.

7. ———: ———: ———: CONTRACT: CONSIDERATION: ASSIGNEE. C., and other directors of a corporation, issued to themselves paid up shares for the entire capital stock in payment of mining property transferred by them to the corporation. The mining property possessed substantial value, but it was small as compared with the capital stock. Subsequently the directors, with the consent of the persons to whom the stock had been issued, set apart one-half of the stock to be, used for carrying on the business of the corporation. Most of this was sold and was used for the purposes of the corporation. Afterwards the directors, C. being present, passed a resolution assessing the stock still retained by them to pay debts of the corporation, and such stock was then assessed. C. failed to pay his assessment, and, after demand, surrendered all his stock, except one hundred shares, which he had hypothecated, and agreed to surrender said shares so soon as he obtained control of them. *Held*, there was sufficient consideration for C.'s promise to surrender the one hundred shares, and that his assignee, who took with notice of the facts, could not collect of the company dividends declared on the stock.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED.

*H. S. Priest* and *J. S. Laurie* for appellant.

(1) The objection to the introduction of testimony under the petition should have been sustained, because there is no averment therein, charging that a dividend had been declared by the board of directors of the defendant company. Until that is done, the relation of debtor and creditor does not subsist between the corporation and its stockholders. Cook on Stock and Stockholders, sec. 544. (2) The plaintiff can not recover, because the resolution declaring the dividend excepted from the benefits of such declaration, certificate number 14, for one hundred shares of stock, upon which this suit is brought. If a shareholder is not entitled to a dividend, according to the terms of the resolution declaring it, he can not recover *in assumpsit;* his claim must be against the corporation for a disregard of his rights as a shareholder by the improper action of the directors. *State v. Railroad,* 6 Gill, 363; Morawetz on Corp. [2 Ed.], secs. 450, 451. (3) Plaintiff can not recover, because he was, at the time he purchased the stock, as thoroughly familiar with its *status,* as was Crandall himself, and Crandall could not have recovered, because: *First.* He agreed by voting the assessment upon his own stock, and that of his associates, that the stock was not full paid and that it was assessable. Thus he is now estopped. *Kansas City Hotel Co. v. Harris,* 51 Mo. 465. *Second.* He is further estopped, because his official action as one of the directors in voting the assessment caused his associates to put up this assessment, and make the concern, then insolvent, a going one. *Third.* Because, rather than pay this assessment, he voluntarily surrendered his stock, which was accepted by his associates. He thus escaped what was then a burden of contribution to an

enterprise of gloomy prospect. He can not now be heard to claim a share in the prosperity begotten by the toil and financial contribution of his associates, in which he refused to share. *Imboden v. Ins. Co.*, 31 Mo. App. 321; *Updyke v. City*, 94 Mo. 240. *Fourth.* His letter was an actual surrender of the stock, and equity will consider that done which ought to be done. The certificate itself is of no value, save as an evidence of ownership. Any act of his indicating an unmistakable design upon his part to surrender the stock, if acted upon by the others, was equivalent to an actual surrender of the certificate itself. *Budd v. Railroad*, Oregon, 273; *Glascow v. Nicholson*, 25 Mo. 30; *Ober v. Carson*, 62 Mo. 214; *Bass v. Walsh*, 39 Mo. 192; *Kimball v. Donald*, 20 Mo. 577; *Marion v. Wallis*, 6 Ellis & Bl. 726; *Chaplain v. Rogers*, 1 East, 192; *Leonard v. Davis*, 1 Black, 476; *Sabin v. Bank*, 21 Vt. 353; *Kessil v. Albertis*, 56 Barb. 36; *Spiker v. Nydeger*, 30 Md. 315; *Mitchell v. Mitchell*, 1 Gill, 66; *Crane v. Gough*, 4 Md. 366; *Noyes v. Brown*, 33 Vt. 431; *Newby v. Hill*, 2 Metc. (Ky.) 530; *Dunn v. Snell*, 15 Mass. 485; *Spain v. Hamilton*, 1 Wall. 604; 1 Pom. Eq. Juris., sec. 364; *Wiggins v. McDonald*, 18 Cal. 126. *Fifth.* The surrender, while voluntary, was not without legal consideration. Crandall was relieved of the payment of the assessment which he voted as just and legal. It was this authority which compelled his associates, situated as he was, to contribute their assessments, and thus pull the insolvent company out of the financial quagmire, into which it had been plunged, and made it able to earn the dividends now sued for. A valuable consideration in the sense of the law may consist, either in some right, interest, privilege or benefit, accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. 3 Amer. Ency. of Law, p. 831, sec. 21; *Conrad v. La Rue*,

52 Mich. 83.   (4) The plaintiff can not maintain this action until he shall have established his right to the shares of stock in a court of equity.   He can not establish the title to the shares of stock by a suit for dividends upon the stock.   The corporation having refused to recognize the stock, he should either have sued as for a conversion or have filed a bill in equity to establish his title to the stock. *Hughes v. Vt. Cop.*, 72 N. Y. 207.   (5) On the undisputed facts the defendant is entitled to a decree canceling the certificate and requiring the plaintiff to surrender it.   Such a decree ought to be entered here upon the facts found by the court as well as upon the conceded facts. *Perkins v. Union, etc., Co.*, 12 Allen, 273.

*G. A. Finkelnburg* for respondent.

(1) The shares of stock in controversy were issued to E. J. Crandall at the organization of the defendant company and have always stood in his name. They have never been legally forfeited nor voluntarily surrendered.   (2) The stock has never been forfeited: *First*. Because of noncompliance with the terms of the Illinois statutes governing forfeiture of corporation stock.   Sec. 7, chap. 32, Starr & Curtis' Illinois Stats. 1885; *Klein v. Railroad*, 13 Ill. 515. *Second*. Because, independent of the statute, a forfeiture can only take place in pursuance of a power given in the character and this power must be strictly pursued; otherwise the proceeding is *ultra vires*.   Thompson on Stockholders, par. 196; Cook's Stockholders, par. 121, *et seq.*; 8 Am. and Eng. Encyclopedia, p. 450. *Third*. There was no cause of forfeiture.   The so-called assessment was in the nature of a voluntary contribution by the holders of three fifths of the stock of this company.   So far as the corporation was concerned the stock was all full

paid and nonassessable. As between the corporation and the stockholder the former was estopped from disputing the full paid character of this stock. (3) The intention to surrender the stock in controversy at a future time, as expressed in Mr. Crandall's letter of December 6, 1882, was a mere expression of a purpose. He had a right to change his mind and he did so. There was no binding promise, no consideration, no agreement embodying the essential elements of a contract. (4) If Mr. Crandall was guilty of a breach of contract in the year 1882, the defendant company could ever since that time have sued for damages or specific performance, or if there was legal cause for forfeiture it might have proceeded to forfeit the stock according to law. It did neither, but allowed the stock to remain as the property of Mr. Crandall until the plaintiff bought it, nine years later. If defendant ever had any claim on this stock it has certainly lost it, both under the doctrine of laches and waiver. *Schradski v. Albright*, 93 Mo. 42; *Burgess v. Railroad*, 99 Mo. 496; *Landrum v. Bank*, 63 Mo. 48. (5) By allowing the Crandall stock to be voted in March, 1888, the defendant company recognized the fact that Mr. Crandall still owned the stock and that he was entitled to the rights of a stockholder. (6) The defendant company had no right to discriminate against this particular stock in its declaration of a dividend or to exclude it from participation therein. Such an attempt was void. See Cook's Stockholders, par. 542; *Alling v. Wenzell*, 27 Ill. App. 514; *Ryder v. Railroad*, 13 Ill. 516, 520. (7) If the plaintiff in this case was the owner of the stock when this suit was brought, then he had a right to sue for any dividend in which said stock was properly entitled to participate, and this without first compelling a transfer on the books by an equitable proceeding. The right of ownership to stock may be

tested by a suit for dividends. *Robinson v. National Bank*, 95 N. Y. 638, 644; *Merchants' Nat'l Bank v. Richards*, 6 Mo. App. 454, 462; (affirmed, 74 Mo. 37).

MACFARLANE, J.—This was a suit to recover $3,000, the same being dividends on one hundred shares of stock in the defendant corporation, which stock had been issued to E. J. Crandall and by him assigned to the plaintiff, James A. Hill. The defendant filed a long answer setting up various matters as an equitable defense, with a prayer that the one hundred shares be adjudged to be the property of the defendant, and for other and further relief. As to this answer, it is sufficient to say that it is broad and comprehensive enough to give the defendant the benefit of whatever rights may flow from the following facts.

The defendant, the Atoka Coal and Mining Company, is a corporation organized in 1881, under the laws of the state of Illinois, with a capital stock of $500,000 divided into five thousand shares of $100 each. At the time of the organization of the company, the directors purchased certain coal leases and mining claims in the Indian Territory, and caused the entire stock of the corporation to be issued as full paid up stock in the payment for such property. Shortly thereafter the directors, with the consent of the persons to whom the stock had been issued, passed a resolution setting apart $250,000 of their full paid stock to be used for carrying on the work and purposes of the association. That amount of stock was transferred to the plaintiff Hill to be by him sold. He sold two thousand shares to various persons at $30 per share and it seems he sold the same as "paid up stock." The money thus raised constituted the only means with which the company commenced business. The other three thousand shares were held by James Hill, E. J.

Crandall, R. S. Hays, A. A. Talmage, and a Mr. Folsom. Hill and Crandall and probably Folsom held their shares in their own right, but the other persons represented the Missouri Pacific Railway in their holdings.

According to the evidence of Crandall, the leases and mining claims had some real and substantial value, but it is evident, even from his evidence, that the value of these claims was small as compared with $500,000. He says he does not know how much the stockholders paid for their stock. Mr. Hill testified that he paid nothing for his stock, "not one iota, not one cent."

Crandall conducted and carried on the business of the corporation for about one year. At the expiration of that time the company was indebted to the extent of $40,000, so that it became necessary to raise money to pay these debts and to enable the company to proceed with its business. The evidence shows that Hill and the representatives of the Missouri Pacific Railway Company had several consultations as the best way to raise the money, but it does not appear by any direct evidence that Crandall was a party to any of these consultations. Hill insisted that the persons to whom he had sold the two thousand shares at $30 per share ought not to be called upon to make contribution, and that he and the persons who held the three thousand shares, for which they had paid little or nothing, should raise the desired amount of money.

On the thirteenth of May, 1882, the directors passed a resolution making an assessment of sixteen and two thirds per cent. "on three thousand shares of the capital stock of the company, being one thousand, five hundred shares held by the Missouri Pacific Railway Company, and one thousand, five hundred shares held by E. J. Crandall and associates."

The record of this meeting of the directors shows

that Hill, Talmage, Crandall and Hays were present, but it does not state how these directors or any of them voted on this resolution. At a meeting of the directors held on the sixth of October, 1882, another resolution was passed levying an additional assessment of eight and one eighth per cent. on the same three thousand shares. Hill, Hoxie, Talmage and Hays were present at this meeting, but the record made by the directors does not show that Crandall was present.

On the date of the last mentioned resolution Crandall sent the following communication to the secretary of the defendant:

"ST. LOUIS, Mo., Dec. 6th, 1882.

"*Charles M. Hayes, Esq., Secretary.*

"DEAR SIR:—I hand you herewith certificate of stock in Atoka Coal and Mining Company, number 15, for one hundred shares held by me, and certificate number 43, for fifty-eight shares held by W. R. Crandall, which I surrender to the company as requested by Capt. R. S. Hays. There is one certificate, number 14, for one hundred shares still held by me, which I have hypothecated for a temporary loan that I can not control just at present; but will have it in my possession within sixty days, and will surrender it also.

"Yours truly,

"E. J. CRANDALL."

It is the one hundred shares mentioned in the above letter that constitutes the basis of the present suit. Hill was elected president of the company in May, 1882. Crandall testified for the plaintiff to the following effect: "I surrendered the one hundred and fifty-eight shares to Capt. R. S. Hays. I received a notice from him or somebody that the stock was to be assessed, and I did not have any money and was not in a condition to pay it and thought the easiest way

VOL. 124—11

was the best. I do not know how the stock came to be assessed. I was not connected with the company then. I thought it was assessed for the purpose of freezing me out. I sold the remaining one hundred shares to Hill, and made the transfer at Rochester, New York.''

On cross-examination he says he presumes he was a director in May, 1882; that he knew nothing about the assessment until they wanted him to pay. Says he does not know whether he was or was not present at the meeting held on the thirteenth of May, 1882, or the one held on the sixth of October, 1882. Asked why he did not return the one hundred shares as he said he would in the letter, he answered: ''Because I afterwards took the matter under consideration by advice and found that I had as good a right to it as anybody; had paid for it and he (Hays) had no right to ask me to surrender my property.''

Hill testified that he had one or more conversations with Hoxie and Hays in which he said: ''If Crandall don't pay let him give up the stock; he got us into this boat. I says bluff him and make him give up the stock or pay the $30; we are going to pay as much as my friends did when they bought the stock. I kept insisting on Hays getting the other, and if he had worked it right he would have got it, but after awhile Crandall had a relative down there, the mines commenced making money; he heard of it and made up his mind not to do it; that is about all there is of it.''

Crandall ceased to be an officer of the corporation at or about the date of his letter to secretary Hays, and thereafter paid no attention to company affairs. Hill and others who held the three thousand shares, Crandall excepted, paid the two assessments. The one hundred and fifty-eight shares actually surrendered by Crandall were sold to the Missouri Pacific Railway

Company, at $25 per share, the amount of the two assessments.

Some six years after the date of the surrender of the one hundred and fifty-eight shares by Crandall, there was a further correspondence between him and the secretary of the company, in which the latter demanded a surrender of the one hundred shares. Crandall offered to leave it to a Mr. Ridgley to say what he should do, but the company declined the offer. It was at this time, 1887, that Crandall says he made up his mind that he owned the stock.

Between 1882 and 1888 Hill and the Missouri Pacific railway people had differences over this and other mining enterprises, and he was turned out of the directory. In an unsuccessful effort to reinstate himself, he procured Crandall's proxy and voted the one hundred shares for directors in May, 1888. On the fourteenth of December of that year he purchased these shares, and took an assignment of the certificate. On the sixth of December, 1889, the directors divided the $30 per share on all stock, "saving and excepting one hundred shares of stock in the name of E. J. Crandall, which stock has heretofore been forfeited to this company for nonpayment of calls thereon as evidenced by letter of said E. J. Crandall, of date December 6, 1882, and addressed to Chas. M. Hays, secretary." This was the first dividend ever declared.

On the foregoing evidence the trial court gave judgment for the plaintiff for $3,000 and interest, but upon the condition that plaintiff pay to the defendant $2,500 and interest, being the amount of the two assessments on the one hundred shares. From this judgment the defendant appealed.

Any other necessary facts will appear in the opinion.

I.   The ruling questions in this case are whether there was a sufficient consideration to uphold the agreement among the stockholders that they would advance to the corporation, or pay an assessment, equal to twenty-five per cent. of the stock held by them, and whether the agreement if valid between the parties, was such as the corporation could enforce; and, if so, whether Crandall agreed to a surrender of the stock in question in consideration of a release from the assignment.

While there has been some diversity of opinion as to the liability of a stockholder who has paid for his stock by property transferred to the corporation or for labor or other services done for it, at over valuation, there is no doubt expressed by any of the courts that, as to creditors, a liability of some character does exist. Some of the decisions are to the effect that courts should not undertake to make new contracts between the corporation and those to whom it has issued stock, and all that can be done is to treat the purchase as void and undo the transaction.   These cases require that fraud in over estimating property or services be proved.   1 Cook on Stock and Stockholders, etc. [3 Ed.], secs. 46, 47, and authorities cited in notes.

Other decisions hold that a stockholder, who has acquired his stock from the corporation, under such circumstances, becomes liable to creditors for the difference between the par value of the stock and the actual value of the property or services given for it without regard to whether the transaction was in good faith or fraudulent.   This is the view taken by this court in the case of *Shickle v. Watts*, 94 Mo. 417, in which SHERWOOD, J., speaking for the court, says: "Where an agreement is entered into between a contractor and a corporation, whereby the former is to perform work for, or furnish material to, the latter,.

and to take unpaid stock in part or in full payment, that such contractor, whether for labor or material, can only charge therefor the reasonable market value for such labor or material thus given in exchange; and that all agreements by the corporation to pay more than such reasonable compensation will be disregarded and held for naught by the courts when the rights of creditors intervene. And this is the case, even though no fraud be proved." *Osgood v. King*, 42 Iowa, 478.

It may be said, we think, that there is a substantial unanimity in the authorities that officers of a corporation, who issue to themselves stock, without paying therefor or at an under valuation may be compelled to account for the stock actually received. It is said, with good reason, that they may be required to account to the corporation itself. "This liability arises from the principle of law that a director must account to his corporation for any secret gift that may be made to him by persons contracting with the corporation; and must account also for profits made by his secret participation in contracts between the corporation and third persons. In such cases the director is liable to the corporation or its creditors, not for the par value of the stock received by him, but for the actual value of the stock, or for the profit or price which he received therefor." 1 Cook on Stock and Stockholders, etc. [3 Ed.], sec. 48, and cases cited.

If, then, Crandall, while a director of the corporation, issued to himself the stock in dispute and paid therefor with property at a manifestly over-valuation, and, at the time the alleged agreement was made, liabilities of the company existed for the payment of which its assets were insufficient, there can be no doubt that he could have been compelled to either pay the excess on his stock, or to cancel the whole trans-

action under which it was obtained, and return the shares to the corporation. That liability existing, there can be no doubt that there would be a sufficient consideration to support an agreement to do what the law could require of him. The agreement was really a compromise of an existing liability.

But it is said that the contract was among the stockholders and could not be enforced by the corporation or set up by it in this defense. It is true that there could be no liability on the part of the corporation, as such, for the issue of its stock as fully paid when, as a matter of fact, it had not been fully paid, nor could it levy assessments upon stock which had been fully paid, without statutory authority. But we do not think it follows upon these considerations that it could not enforce an agreement made among its stockholders for its benefit. The corporation holds its assets and is responsible for its debts. When it issues stock as fully paid it can not afterwards assert the contrary, though only a small per cent. of the value was, in fact, paid. But the stockholder who receives the stock at less than its par value does so under an implied agreement that "when the necessity arose and the amount required was ascertained" he would "make such additional payment on the stock as the satisfaction of the claims of creditors required. *Scovill v. Thayer*, 105 U. S. 154. The liability of such stockholder would constitute a reserve fund for the payment of creditors of the company, should the necessity arise. A voluntary agreement among the stockholders to pay a certain per cent. on the then unpaid shares for the satisfaction of creditors would inure to the benefit of the corporation, and could be enforced by it on the same principle that authorizes a corporation to enforce a valid agreement to subscribe for stock made before the organization is

effected. *Schaeffer v. Ins. Co.*, 46 Mo. 249; *Haskell v. Worthington*, 94 Mo. 564.

A stockholder who, while a director, had issued to himself stock without paying therefor might well prefer to surrender the stock to the corporation rather than incur the liability for which he would be bound in case of a failure of the enterprise. An agreement to do so, made with other stockholders who were in like situation, should bind him as effectually as an agreement to pay the corporation an assessment on his unpaid stock, and no reason can be seen why such a contract could not be enforced by the corporation as well.

It is true that a corporation has no right, outside a statutory or charter provision, to declare or enforce a forfeiture of the shares of a stockholder against his consent. 1 Cook on Stock and Stockholders, etc. [3 Ed.], sec. 121, *et seq*. This is on the ground that he acquires rights by virtue of his stock that he can not be compelled to surrender.

A voluntary surrender of stock stands upon a different footing, and, if assented to by the corporation and others interested, it will be effectual. 1 Beach on Private Corp., sec. 101. Such a surrender will release the withdrawing member from liability upon debts thereafter created. 1 Beach on Private Corp., sec. 113.

Nor is it necessary that the consent to a withdrawal be expressed. It may be implied from circumstances. 1 Beach on Private Corp., sec. 101. And "it may be received as sufficient evidence of a cancellation without any record of a cancellation having been made upon the books of the corporation, that neither the subscriber nor the company regarded the subscriber as a stockholder." *Stuart v. Railroad*, 32 Gratt.

146. Or from long acquiescence. *Evans v. Smallcombe,* L. R. 3, H. L. 249.

Now, applying these principles to the facts as shown by this record, Crandall and Hill, his assignee, were original promoters of the corporation and were directors upon its organization. Both were allotted stock, for which nothing substantial was paid. They issued to themselves this stock as fully paid. Of this stock Crandall received two hundred and fifty-eight shares. Both continued in the directory for some time, Crandall managing the coal mining business of the corporation. After the directors had divided among themselves a large portion of the stock, for which they paid but a small per cent., if anything, the balance (two thousand shares) was sold to outsiders at $30 per share.

The business did not prosper, and at the end of Crandall's management it was found to be in debt to the amount of about $40,000. In this condition of affairs it was manifest that, in order to pay the debts and to continue the enterprise, money would have to be raised. It appears that consultations were had among those of the stockholders who had paid nothing for their stock, and an agreement was reached that each of such stockholders should bear an assessment of twenty-five per cent. on the par value of their stock. The evidence tended to prove that Crandall assented to this arrangement. Under authority of this arrangement, two assessments were regularly made upon this stock by the corporation. The evidence tended · to prove that Crandall was present and assented to the first of these assessments.

The evidence also tended to prove that Crandall was wholly insolvent and unable to pay these calls, and that he agreed, instead of paying the assessments, to surrender to the corporation his stock. Crandall dis-

puted that he assented to either the assessment or the surrender. He did, however, surrender one hundred and fifty-eight shares, and notified the company that he would soon forward to it the remaining one hundred shares. That was December 6, 1882. The other stockholders paid the assessments, and, with the money so paid, the enterprise was pushed forward. In 1888 plaintiff, with full knowledge of all the facts, purchased from Crandall said one hundred shares for the sum of $750. At that time the business had begun to prosper, and in December, 1889, was able to declare a dividend of $30 per share, from which the said one hundred shares were expressly excluded. During that time, while he held the stock, Crandall took no part and manifested no interest in the affairs of the company, except on one occasion; at the request of plaintiff, he gave him his proxy to vote at a stockholders' meeting.

I am of the opinion that the evidence of the original agreement, taken in connection with the surrender of the one hundred and fifty-eight shares and his promise to return the remaining one hundred shares and his subsequent conduct very conclusively establishes the agreement to surrender this stock.

Under the principles of law heretofore announced I am of the opinion that there was sufficient consideration for the promise, and, being for the benefit of the corporation, it had the power to cancel the stock, as between itself and Crandall or plaintiff, his assignee, with notice.

The equitable relief prayed for by defendant should have been granted. Judgment reversed. BRACE, BARCLAY and SHERWOOD, JJ., concur. BLACK, C. J., and BURGESS, J., dissent.

BURGESS, J. (*dissenting.*)—This is a suit brought by plaintiff to recover a dividend of $30 per share upon one hundred shares of stock included in certificate number 14, issued to E. J. Crandall and by him assigned to plaintiff.

The petition is as follows: "Plaintiff states that defendant is a corporation organized under the laws of the state of Illinois having property in the state of Missouri, and an office in the city of St. Louis in said state for the transaction of its usual and customary business. Plaintiff further states that defendant is indebted to plaintiff in the sum of $3,000 for dividends which have accrued upon one hundred shares of the capital stock of defendant's said corporation held and owned by plaintiff, being the one hundred shares described in stock certificate number 14 of said corporation originally issued and delivered to one E. J. Crandall and by him transferred for value to plaintiff. Plaintiff says that said dividends became due and payable in St. Louis, Missouri, on or about the tenth day of December, 1889, that although demanded, defendant refuses to pay the same, wherefore plaintiff prays judgment for said sum of $3,000, with interest from the tenth day of December, 1889, and for his costs."

The answer, in addition to the general issue, pleaded substantially in estoppel the facts which appeared from the testimony at the trial, and asked that the certificate of stock number 14 be surrendered by plaintiff and canceled.

In March, 1881, defendant was duly incorporated under the laws of the state of Illinois, with a capital stock of $500,000 which was divided into five thousand shares of $100 each. E. J. Crandall subscribed for four thousand, seven hundred and fifty shares, and the remaining two hundred and fifty shares were taken by

plaintiff and various other parties, by virtue of an agreement previously made with them.    At that time, plaintiff and E. J. Crandall were directors of the corporation.    By May 15, 1882, all of the stock held by Crandall was disposed of by him in compliance with the requirement of the board of directors, except two hundred and fifty-eight shares.  It became necessary for the defendant to raise funds and at a meeting of the board of directors held on the thirteenth day of May, 1882, an assessment of sixteen and two thirds per cent. was levied upon three thousand shares of the stock of the company by consent of the stockholders, except Crandall, which included the two hundred and fifty-eight shares held by him.    An additional assessment of eight and one third per cent. was subsequently made on the same shares of stock in the same way.    During this time plaintiff was president and Crandall vice president of the company.    They were both present when the first assessment was made, but Crandall did not vote on the proposition.    Crandall was not present when the last assessment was made, but Hill was. Shortly after the assessment was made Crandall refused to pay the assessments against his stock, and wrote to the secretary of the company the following letter:

"MINES AT COLLINSVILLE, Ill.
"ST. LOUIS, Mo., Dec. 6th, 1882.
"*Chas. M. Hays, Esq., Secretary.*

"DEAR SIR: I hand you herewith certificate of stock in Atoka Coal & Mining Co. number 15 for one hundred shares held by me, and certificate number 43, for fifty-eight shares held by W. R. Crandall, which I surrender to the company as requested by Capt. R. S. Hays.    There is one certificate, number 13, for one hundred shares, still held by me, which I have hypothecated for a temporary loan, that I can not control just

at present; but will have it in my possession within sixty days, and will then surrender it also.

"Yours truly,

"E. J. CRANDALL."

It was some time before the one hundred shares were redeemed by Crandall, and he never surrendered the certificate, although repeatedly urged to do so by plaintiff and other officers of the company. The matter remained in this condition until early in 1887, when another formal demand was made on Crandall by the secretary of the company for the surrender of the stock.

Plaintiff, with full knowledge of all the facts and circumstances, in December, 1888, purchased from Crandall said one hundred shares of stock for the sum of $750. In December, 1889, the company declared a dividend of $30 per share on all stock of record on its books, except the one hundred shares in question. There never was at any time a technical forfeiture of this stock. Before the dividend was declared, plaintiff presented the certificate of stock number 14, assigned to him by Crandall, to the company's office, and requested a transfer to him on the books, which was refused.

At the annual meeting of the stockholders in 1888, the plaintiff, as proxy for Crandall, voted the one hundred shares of stock. A number of the other stockholders were not present at this meeting, and they also voted by proxy.

The cause was tried by the court without a jury, and no declarations of law were asked or given. A judgment was rendered requiring defendant to pay the amount of the dividend with interest thereon at six per cent. per annum from the time it was de-manded by plaintiff, upon condition that plaintiff within thirty days, pay to the defendant the sum of $2,500 with interest at the rate of six per cent. per

annum from the fifteenth day of June, 1882, being the amount of the assessments and interest; the costs to be equally divided between the parties.

Defendant then filed the usual motions for new trial and in arrest of judgment, which being overruled, the cause is here by appeal.

1. It is urged with much confidence by appellants' counsel that the court should have sustained the objection to the introduction of any testimony under the petition, because there was no averment therein, charging that a dividend has been declared by the board of directors of the defendant company, and until that is done, the relation of debtor and creditor does not subsist between the corporation and its stockholders.

This, as a proposition of law, is unquestionably correct. Cook on Stock and Stockholders, etc. [2 Ed.], sec. 544. And unless the petition in substance does allege that fact the objection should have been sustained. The allegation in the petition is that a dividend on the stock had *accrued* and that it became due and payable at St. Louis on the tenth day of December, 1889, and that it was demanded of the defendant corporation and wrongfully refused. Under the statutory rule for construing pleadings, which requires them to be "liberally construed, with a view to substantial justice between the parties," (section 2074, Revised Statutes, 1889) the above allegation may well be construed to mean that a dividend had been declared, and this seems what was intended by the pleader, because he follows it up with the allegation "that said dividend became due and payable at St. Louis, Missouri, on or about the tenth day of December, 1889, and that although demanded, defendant refused to pay the same." By section 2055, Revised Statutes, 1889, "only the substantive facts necessary to constitute the cause of action or defense shall be required to be stated." We think

that the petition, construed by the rule herein invoked, is substantially good.

II.   The next point of contention is that the plaintiff can not recover, because the resolution declaring the dividend, excepted from the benefits of such declaration, certificate number 14, for the one hundred shares of stock, upon which this suit is brought, and that in so far as this certificate is concerned, no dividend was ever declared on the stock, and that therefore his only remedy is by proceeding against the corporation for disregarding his rights.

This position, if the facts in the case justify it, seems to be sustained both by reason and authority. *State v. Railroad*, 6 Gill. 386; 1 Morawetz on Private Corporations [2 Ed.], secs. 450 and 451.   But on the sixth day of December, 1889, defendant company by a resolution of its board did declare a dividend of $30 per share on all stock of record, saving and excepting the one hundred shares of stock in the name of E. J. Crandall, and plaintiff, as assignee of Crandall, is entitled to recover the dividend on his stock, unless the corporation had the power to discriminate against and preclude it from participation therein.   The stockholders were all of the same class, and, when such is the case, the dividends must always be *pro rata* equal and without preference.   Cook on Stock and Stockholders [2 Ed.], sec. 542; *Ryder v. Railroad Co.*, 13 Ill. 516; *Alling v. Wenzell*, 27 Ill. App. 511.

It would seem, under these authorities, that the resolution of the corporation, in so far as it discriminated against the one hundred shares of stock now held by plaintiff, is absolutely void and of no effect.

III.   Plaintiff, being the owner of the stock when this suit was brought, had the right to sue for any dividend to which it was properly entitled to participate, to wit, $30 per share as declared by the resolution of

the corporation passed on the sixth day of December, 1889, and that, too, without first compelling a transfer to him of the stock on the books by an equitable proceeding. *Robinson v. Bank*, 95 N. Y. 638; *Merchant's National Bank v. Richards*, 6 Mo. App. 454, affirmed 74 Mo. 77.

IV. It is further claimed that plaintiff can not recover because he was, at the time he purchased the stock, as thoroughly familiar with its status as was Crandall himself, and that Crandall could not have recovered, because, by voting the assessment on his own stock and that of his associates, it was an admission on his part that the stock was not fully paid and was assessable; and that rather than pay these assessments he voluntarily surrendered his stock, which was accepted by his associates. This position does not seem to us to be borne out by the evidence. When Crandall surrendered the one hundred and fifty-eight shares of stock, as evidenced by certificates numbers 14 and 43, in his letter of date December 6, 1882, which accompanied them, he expressly stated that the stock in controversy was not at that time under his control; that it was hypothecated to secure a temporary loan, but that he would have it in his possession within sixty days and would then surrender it.

The stock in controversy is paid up stock, and could not have been assessed by a majority vote of the stockholders, nor of the directors (Cook on Stock and Stockholders, etc. [2 Ed.], sec. 243) only by common consent. And while the evidence of Hill and Hays tends to show that the twenty-five per cent. assessment was made by agreement among the stockholders, it was simply voluntary, and does not show that Crandall ever at any time consented thereto. On the contrary, Crandall testifies that he was unable to pay the assess-

ment and thought that it was for the purpose of "freezing him out."

The stock was never at any time surrendered, nor were there any steps taken by the corporation to forfeit it for the nonpayment of the assessments claimed to have been made against it, nor to compel its surrender, although about nine years elapsed from the time that the assessments are alleged to have been made before this suit was instituted. If the theory of defendant is correct, it might have maintained an action against plaintiff and Crandall for specific performance of the contract with Crandall and compelled the surrender of the one hundred shares of stock in controversy; but, as shown by the evidence, Crandall did not consent to the assessment, and there was, therefore, no consideration for the promise made by him for the surrender, and the promise was *nudum pactum*. And, for the same reason, the defense based on such a ground must fail. Even if the stock had been forfeited for nonpayment of calls regularly made, a court of equity will allow the owner to redeem the stock by the payment of the amount due with interest, if the stock has not been issued to another person. *Walker v. Ogden*, 1 Biss. 287. Such was the effect of the decree of the court in this case.

It is admitted that there was no technical forfeiture of the stock. And the facts as developed by the evidence are not sufficient to estop plaintiff as the assignee of Crandall from suing for and collecting the amount of the dividend declared by defendant corporation on the stock.

The certificate of stock is evidence of ownership, and passed the stock to the assignee by virtue of the assignment. Cook on Stock and Stockholders, etc. [2 Ed.], sec. 231; *Chouteau Spring Co., v. Harris*, 20 Mo. 383; *Budd v. Street R'y Co.*, 12 Oregon, 273. The

promise, then, to surrender it at some future time is governed by the same rules of law that control in regard to contracts or promises for the delivery of other personal property or choses in possession or choses in action. The large number of authorities cited by counsel for appellant on this point are either cases of symbolical delivery *in præsenti*, or for the delivery for a valuable consideration of something tangible *in futuro*.

That the stock was never surrendered by Crandall, and was never so understood to be by the defendant corporation, finds support in the fact that in December, 1889, the company declared a dividend of $30 per share on all stock of record on its books, except the one hundred shares now held by plaintiff. If it had been surrendered and accepted, as contended for by defendant, why was it kept on its books and excepted from the resolution declaring the dividends?

V. The cause was tried as one in equity, and we are not prepared to say that the finding of the court was not authorized by the facts in proof, or that it is not just and equitable between the parties. The answer interposed an equitable defense, and the cause was properly tried by the court sitting as a chancellor. *Durfee v. Moran*, 57 Mo. 374.

Finding no error that will justify a reversal of the cause, the judgment should be affirmed. BLACK, C. J., and GANTT, J., concur with me.

ON MOTION FOR REHEARING.

PER CURIAM.—On respondent's motion for rehearing, the chief contention is that the testimony touching the agreement to surrender the stock does not establish that agreement with any such clearness as would

authorize a court of equity to act upon it. On that point the record now before the court is by no means as satisfactory as we could wish; and, after careful reconsideration of it, we are of opinion that the interests of justice would be subserved by a retrial of the cause. We think that the evidence as it now stands tends to sustain an inference of such an agreement, but, owing to the obscurity of the showing on that point, our final order is that the judgment be reversed and the cause remanded for new trial.

With this modification of the former judgment, the motion for rehearing is overruled.

BLACK, C. J., and GANTT and BURGESS, JJ., dissent.