SAMUEL BUCKLEW, Respondent, v. ROBERT B PYRON et al., Appellants.

Kansas City Court of Appeals, February 13, 1911.

1. **CORPORATIONS: Stock: Sale: Consideration.** A corporation was organized in Texas by three men. The capital stock was $10,000, divided into 100 shares, each of $100 par value. Only $500 was paid in in cash. The stock was issued to the three incorporators in about equal amounts and was, by their order, marked 'paid up and non-assessable." Afterwards one of them bought one of the other's stock; and after that he and the third one entered into a written contract whereby the third one also sold his stock, for which he gave his promissory notes. In a suit on the notes it was held that the transfer of the stock was a sufficient consideration for the notes.

2. ———: ———: Stockholders, Inter se: Creditors. Though the law declares that all issue of corporate stock is void unless it is paid up in full, yet, where the contest is between the organizing stockholders who issued the stock without its being paid up, the stock is not void. But otherwise as to creditors or nonconsenting stockholders.

3. ———: ———: Notes for Purchase Money: Consideration. If stock is issued without being paid up and notes are given by one stockholder to another for stock, in order that the purchaser may have full control of the corporation, which is a going concern, and he thereby becomes possessed of all the stock and runs and manages the corporation, receiving all the profits of the business, he will not be allowed to say the sale was void and afforded no consideration for notes given for the purchase money.

Appeal from Jackson Circuit Court.—*Hon. A. F. Smith,* Special Judge.

AFFIRMED.

*Botsford, Deatherage & Creason* for appellant.

(1) This suit of plaintiff Bucklew against defendant Pyron to recover on the counts of the amended peti-

tion from No. 2 to No. 9, inclusive, based on the $500 notes, is an attempt to recover something for nothing. Those notes are wholly without consideration and are therefore void. There is no better defense in the law than failure of consideration. The defense of failure of consideration is based upon and is laid deeply in the jurisprudence of equity and good conscience. Besides, the agreement between the promoters and incorporators of the land company, by which the stock was to be issued without the payment therefor of either any money, property or services, being founded upon a consideration which was and is illegal, is void as between the parties and their privies, and, being void, neither a court of law or equity will entertain a suit brought in relation to that contract, but will leave the parties as it finds them. 6 Am. and Eng. Ency. Law (2 Ed.), pp. 757, 758; Campbell v. Joies, 2 Tex. Civ. App. 263, 21 S. W. 723. The contract between Oliver, Bucklew and Pyron was wholly without consideration, being illegal and void, such stock could not constitute a sufficient consideration for a promise by Pyron to Bucklew. 15 Am. and Eng. Ency. Law, pp. 932, 936, 937; Rue v. Railroad, 74 Texas 474, 8 S. W. 533. It is presumed that the laws of Texas, rendering void all fictitious issues of stock, are the same as. those of Missouri on the same subject. Kollock v. Emmet, 43 Mo. App. 566; Waite v. Bartlett, 53 Mo. App. 378; Hard. & Mfg. Co. v. Lang, 54 Mo. App. 147; Hurley v. Railroad, 57 Mo. App. 675; Clark v. Barnes, 58 Mo. App. 667; Barhydt v. Alexander, 59 Mo. App. 188. (2) The stock of plaintiff Bucklew transferred by him to defendant Pyron and for which the $500 notes in suit were given, having been issued under an agreement between said Bucklew, Pyron and Oliver that said stock was to be issued as fully paid up and non-assessable, without any payment whatever in money, property or services therefor, was and is fictitious, both under the Constitution and laws of Missouri and Texas, and was therefore void, and said stock there-

fore could not be the basis of said $500 notes given
therefor, and said contract for the sale of said stock by
Bucklew and Pyron and said $500 notes given therefor
and sued on herein, being illegal and without consider-
ation and unexecuted and still executory, it results that
Bucklew is not entitled to recover thereon, and that
the instruction of the trial court to find for Bucklew as
to those notes, which was excepted to by Pyron, was
erroneous; and for that reason the verdict and judgment
on those $500 notes should be reversed.  Rogers v. Gross,
67 Minn. 224, 69 N. W. 894; Coler v. Ry. & Power Co.,
65 N. J. Eq. 347, 54 Atl. 413; Tschumi v. Hills, 6 Kan.
App. 549; Scoville v. Thayer, 105 U. S. 143; Railroad
v. Dow, 120 U. S. 287-298; Hallett v. N. E. Grate Co.,
105 Fed. Rep. 217; s. c., 119 Fed. Rep. 873, 56 C. C. A.
403; Altenberg v. Grant, 85 Fed. Rep. 345, 29 C. C. A.
185.

*J. C. Rosenberger* and *Kersey Coates Reed* for re-
spondent.

(1)  Although all of the transactions in question
took place in the State of Texas and were to be per-
formed there, we agree with the appellants that the
applicatory and governing law to be applied to the ques-
tions raised by appellants in their brief is the law of
Missouri, being the law of the forum.  The defendants
did not plead or prove any of the constitutional pro-
visions, statutes or decisions of the State of Texas bear-
ing on the questions raised in their brief.  The general
rule as laid down in this state is that where the con-
dition of the law of another state becomes material
and no evidence has been offered concerning it, our
courts will presume that the general principles of the
common law prevail here, but that no such presumption
obtains respecting the constitutional or statutory law
of the foreign state.  Morissey v. Wiggins Ferry Co.,
47 Mo. 525; McDonald v. Banker's Life, 154 Mo. 628;

Houghtaling v. Ball, 19 Mo. 86. (2) But the State of Texas falls within an exception to this general rule, it being held that the presumption that the common law prevails in another state relates only to those states which were once parts of the English possessions and not to Texas, which was part of the Spanish possessions, and that as to the State of Texas if no evidence is introduced, the law of the forum must govern. Flato v. Mulhall, 72 Mo. 525. And the court in the case last cited applied Missouri statutes to a Texas contract, there being no plea or proof of the Texas statutes. Where no rights of creditors are involved as between a corporation and its shareholders, whatever is agreed to be payment for stock, is payment, and neither the company nor a participating stockholder will afterward be heard to say that the stock was not fully paid for. This is the law in Missouri as well as elsewhere. 10 Cyc. 466, 469; Skrainka v. Allen, 76 Mo. 384; Hill v. Coal Co., 124 Mo. 166; Standard Machine Co. v. Hills, 68 Mo. App. 249; Roll v. Milling Co., 52 Mo. App. 60; Meyer v. Milling Co., 193 Mo. 192, 196; Woolfolk v. January, 131 Mo. 634; Vogeler v. Punch, 205 Mo. 571; Scovil v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Krohn v. Williamson, 62 Fed. 875; Callanan v. Windson, 78 Iowa 197, 42 N. W. 653; Barr v. Railroad, 57 Fed. 375; McCracken v. Railroad, 57 Fed. 375, 52 Fed. 726. (3) Independently of the validity of plaintiff's stock the benefit and advantage derived by Pyron in its acquisition and in thereby putting himself in sole control of the company and its assets was abundant consideration for the transfer of the stock and the notes given in payment therefore. Sec. 2774, R. S. 1909; 9 Cyc. 311; Lindell v. Rokes, 60 Mo. 249; Pitt v. Gentle, 49 Mo. 74; Carr v. Card, 34 Mo. 513; Hout v. Frisbee, 66 Mo. App. 16. (4) Even if there were merit in the contention of appellants that the stock was issued illegally to plaintiff, and there is none, there was nothing illegal in the contract made nine months afterward by Pyron

for the purchase of plaintiff's stock. The series of eight notes arose out of the contract of sale, not out of the issuance by the company of its stock. The contract for the sale of the stock was made long after the issuance of the stock had been fully consummated, was for a lawful object and had no relation to the manner the stock was issued or paid for. 15 Am. and Eng. Ency. Law, 992; Hutchinson v. Dornin, 23 Mo. App. 575; Curry v. La Fon, 133 Mo. App. 163.

ELLISON, J.—Plaintiff's action is based on a petition containing nine counts; each for the recovery of judgment on a promissory note executed by defendants; in the first of these counts the note is for $1000, and in each of the remaining eight the note is for $500; the whole aggregating $5000. The defendants answered separately. Defendant Pyron's answer to the first count was a general denial; that the note was given without consideration; that it had been fully paid; and that it was given for plaintiff's accommodation only. His answer to each of the other counts was that the notes were given without consideration; that they each had been fully paid, and that the other defendant, the "Bob Pyron Land Company," had been organized in the State of Texas as a corporation dealing in the sale of lands, with a capital stock of $10,000, divided into one hundred shares of $100 each, that defendant, one W. E. Oliver and plaintiff were the incorporators of such corporation, with Oliver and plaintiff each subscribing for thirty-three shares and defendant for the remaining thirty-four shares; that $500 was actually paid in cash, on such subscriptions. That Oliver afterwards "contributed on his stock $1283," and defendant "also contributed and paid into the treasury of said company on his stock large sums of money." That plaintiff was called upon to pay the balance upon his subscription and that he paid in response the sum of $1000. But before making this payment he asked Oliver and the de-

fendants to give and endorse the note to him of $1000 which he has sued upon in the first count, as an accommodation note for him to use in borrowing the money with which to pay the $1000 on his stock subscription, and that this was done, solely to favor and accommodate him. That some time after the organization of the corporation defendant bought Oliver's stock, paying him therefor $1283, the amount he had paid into the treasury on it, making defendant's total stock to be sixty-seven shares. That shortly afterwards, on the 28th of November, 1906, plaintiff and defendant entered into a written contract whereby defendant bought of plaintiff his thirty-three shares of stock for $5000, of which $500 was paid in cash and a note for $500 due the 1st of January, 1907, and eight notes, each for a like amount, one due the first of each month thereafter. These notes were secured by the certificates of stock being endorsed by plaintiff and deposited in bank and also by an assignment of certain commissions due defendant amounting to $2000. That the cash was paid and the first note falling due was also paid by defendant. But the others are the ones sued upon in this action. It is then pleaded that at the time of making this contract, it was understood and agreed that the $5000 thus agreed to be paid for the stock, included the note for $1000 sued on in the first count, and it was to be cancelled and delivered to defendant. But that plaintiff has refused to so cancel and deliver it and in consequence "the consideration for all of said notes in the petition and the $500 cash paid and the consideration for the $500 note which defendant paid, has failed; in consequence of which, defendant has the right to elect and does elect to rescind the contract aforesaid." Wherefore it is alleged that plaintiff has become liable to pay him back the $1000 so paid, and for which judgment is asked as a counterclaim, and that the first note be cancelled.

The separate answer of the land company was, first a general denial except it admitted its incorporation; second, want of consideration for any of the notes sued on; third, payment; fourth, that the note for $1000 sued on in the first count was given for plaintiff's accommodation, that he might borrow money thereon; fifth, that giving the note by defendant was not within the power of the corporation; sixth, that a certain contract already described in Pyron's separate answer, was made between the parties and that it had been violated by plaintiff and that it had been rescinded, and pleading a counterclaim for $450 "for money paid to plaintiff;" seventh, the corporation law of the State of Texas is plead and it is alleged that the defendant corporation was formed with plaintiff as one of the original sub-scribers of stock in the sum of $3300, on which he had paid $1250, leaving still unpaid $2050, for which judgment was asked.

Plaintiff's reply set up estoppel, in that defendant had joined in the organization of the corporation; had participated in the issue of the stock and stamping it paid and non-assessable, and that he was enjoying the benefit of the sale made by plaintiff to him.

The cause was tried by A. F. Smith, Esq., of the Kansas City bar, as special judge. The judgment was for the plaintiff on all of the counts. On the first, it was against both defendants; but on the eight other counts it was against defendant Pyron only.

The foregoing statement, though of some length, is much shorter than that made by the parties. We have omitted much detail which could be of no service in stating the reasons for our conclusions. It appears that a land company corporation was formed, in the State of Texas with a capital stock of $10,000, divided into one hundred shares of the par value of $100 each, and that one Oliver, plaintiff and defendant Pyron were the incorporators, the two former taking thirty-three shares each and the latter thirty-four shares. That af-

terwards defendant Pyron bought Oliver's stock, making his holding to be sixty-seven shares; and that afterwards he bought plaintiff's shares. There was evidence tending to prove that there was dealing between plaintiff and defendant Pyron, not necessary to describe in detail, whereby he was indebted to plaintiff by reason of the latter making advancements to him in addition to a loan made for which the note of $1000, sued on in the first count, was given. After a time, plaintiff having grown restive about the affairs of the corporation, which was managed by Pyron, the latter proposed to buy him out. After some negotiation, it was determined that plaintiff would sell to Pyron his stock and his interest and his unsettled claims against the company, for the sum of $5000. A written contract was thereupon made whereby plaintiff sold his stock and all his "claim, right, title and interest in and to said company of any kind whatsoever," for $5000, to be paid by $500 in cash and nine notes for $500 each. The cash payment was made and the first note was paid, while the remaining eight and the note for $1000 are the subject of this action.

The defense to the notes, except the one in the first court, the $1000, is based on an attempt to investigate and determine the rights of the parties without recognition of the binding force of the written contract between plaintiff and defendant Pyron. That contract is couched in plain and unambiguous language to the effect that for plaintiff's stock and for his advancements to the company, Pyron was to pay him $5000; of which $500 was to be in cash and the balance in nine notes, one of which was paid and the others now in controversy. The trial court properly informed the jury that the contract bound the parties and that there was no defense to the notes. Under the evidence the court could have done no less than this without committing error against the plaintiff. The whole effort to show other matters, contracts and understanding outside of,

in addition to, or contradiction of the contract, was in the face of a fundamental rule governing written contracts.

And the same may be said of Pyron's counterclaim for $1000, and it was properly disallowed by a peremptory instruction. And the same may be said of the effort to include in the contract the note of $1000, sued on in the first count, by insisting that it was sold by plaintiff along with the stock. The same also may be said of the counterclaim for $2050, hereinbefore referred to.

The note last mentioned, as already shown, was claimed by plaintiff to be for borrowed money, and defendant claimed it was merely an accommodation note to enable plaintiff to borrow money. The issue was submitted to the jury and the finding is supported by the evidence.

The counterclaim of the defendant land company of $450 "for money paid to plaintiff," to which we have already referred, was properly submitted to the jury on evidence which supports the finding.

This brings us to what is the principal defense. Defendants claim that the issuance of stock in the manner this was issued, was contrary to law, against public policy, and therefore void.

It appears to be conceded by the parties that under the laws of both Texas and Missouri all fictitious issues or increase of stock of any corporation are void; and that no stock should be issued except for money paid, labor done, or property actually received. Under the laws of Texas a corporation could be formed with a capital as small as $10,000, and only one-half of the capital need be subscribed, and only ten per cent of that need to be paid in order to begin business. These parties, it seems, paid $500. Oliver was made president of the corporation and defendant Pyron secretary, and they as such officers issued to themselves and to plaintiff as the original stockholders these respective cer-

tificates of stock, as already mentioned. Across the face of these certificates were the words "Full paid and non-assessable." The most that can be said for the stock issued in this case, is that if it were not issued without anything being paid, the payment made was far less than its face value. The question is, shall it be considered valid stock between the parties to this controversy?

It will help out an understanding of our conclusion by also stating what is not the question. It is not a question between stockholders and creditors, nor between creditors and the corporation. It is not a question between the corporation and non-consenting stockholders. It is not a question involving an unexecuted contract as to the stock. It is a question between stockholders concerning an executed transaction, in which *all* agreed and *all* took part in doing what one of them now seeks to avoid the consequence of doing. The law is that as between the consenting stockholders, if an arrangement is made whereby stock is issued for less than its value, one cannot take advantage of that lack of compliance with the directions of the law, to the disadvantage of the other. [Skrainka v. Allen, 76 Mo. 384, 391; Hill v. Coal Co., 124 Mo. 153, 166; Woolfolk v. January, 131 Mo. 620, 634; Meyer v. Mining & Milling Co., 192 Mo. 162, 191, 196; Vogeler v. Punch, 205 Mo. 558, 571; Scovill v. Thayer, 105 U. S. 143; Standard M. M. Co. v. Hills, 68 Mo. App. 249; Roll v. Smelting & Mining Co., 52 Mo. App. 60.]

We cannot undertake to review a long list of authorities cited by defendants and content ourselves with the statement that far the greater part of them were contests over questions which we have said are not in this case. In Memphis & L. R. Ry. Co. v. Dow, 120 U. S. 287, 298, there occurs this statement: "The prohibition against the issuing of stock or bonds, except for money or property actually received or labor done, and against the fictitious increase of stock or indebtedness,

was intended to protect stockholders against spolia-tion, and to guard the public against securities that were absolutely worthless. One of the mischiefs sought to be remedied is the flooding of the market with stock and bonds that do not represent anything whatever of substantial value."

It will be observed that nothing is said concerning the protection of stockholders against their own acts which have been accomplished.

But it seems clear to us that the defendants are, upon other reasons, without ground upon which to base their claim of total failure of consideration of the notes. The written contract transferred not only the stock, but all interest in the corporation or claims against it. Plaintiff retired from the corporation and left it solely in defendant Pyron's hands. Granting it may have been organized in an illegal way, it was, in point of fact, a going concern, earning money, and defendant was put into possession of all its assets and the possessor and owner of all its earnings which may have been then on hand. He seemed to want to have sole control, to man-age with a hand untrammelled by the critical or in-quiring or restraining hand of other interests, and he finally entered into an agreement whereby he would pay a certain sum to accomplish that desired end. We see no reason why he should now say there was no con-sideration, when asked to pay the price.

We think the case well tried, and the judgment for the right party. It is accordingly affirmed. All concur.