Arthur KAISER, Plaintiff-Respondent,

v.

David MOULTON, Betty Moulton, Patricia Kaiser, and Jerry Kaiser & Associates, Inc., A Missouri Corporation, Defendants-Appellants.

Nos. 42554, 42571.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 1, 1981.

Daniel P. Card, II, Clayton, for defendants-appellants.

Stuart J. Radloff, St. Louis, for plaintiff-respondent.

STEWART, Judge.

Arthur Kaiser, who alleged that he is a stockholder of Jerry Kaiser & Associates, Inc., a corporation (Corporation) brought an action in four counts against the Corporation, David Moulton and his wife, and Patricia Kaiser, individually and as executrix of the estate of Jerry Kaiser. Count I seeks damages on the ground that Moulton and the Corporation refused to permit plaintiff to inspect the books of the Corporation. Count II seeks a declaration that plaintiff was a shareholder of the Corporation. Counts III and IV seek an accounting of the assets of the Corporation and appointment of a receiver.

The court tried Count II of the petition and entered its order declaring plaintiff to be "the legal and registered owner of stock certificate number 1 of the Corporation." The court designated its order to be a final judgment for the purposes of appeal. We thus have jurisdiction of the appeal. § 512.020 RSMo 1978.

In 1955 plaintiff joined his cousin, Jerry Kaiser, in the business of real estate development. Generally they used separate corporations for each development. They had developed properties in Chieftan Manor, Inc., Kaiser-Glick, and Kaiser Realty and Construction Company. In April of 1962 Jerry Kaiser and Associates, Inc. was incorporated as a real estate development company. It had authority to issue 3,000 shares of common stock having a par value of $10.00 per share. The Articles of Incorporation provided that the number of shares to be issued before commencing business was 50 and the capital with which the Corporation would commence business was $500.00. Named as incorporators were Jerry Kaiser with 20 shares, Norman Barken—20 shares and Jeannette Williams—10 shares. The incorporators also constituted the original board of directors. This Corporation was inactive until late 1963.

The office for the various corporations was in Clayton. Mr. Moulton apparently came into the office in early 1963. He worked on various deals with Jerry Kaiser.

In June of 1963, while on jury duty, plaintiff met a realtor who told him of the availability of some unimproved ground on Hecht Avenue just off Halls Ferry Road. Plaintiff advised Jerry Kaiser and Moulton, and this land, along with an adjoining tract, was subsequently acquired by Jerry Kaiser & Associates, Inc. and developed into a project known as Sherwood Manor Apartments.

In purchasing the property, Jerry Kaiser and Associates, Inc., some time before No-

vember 1, 1963, obtained a loan commitment from Roosevelt Federal Savings & Loan Association for the purchase of the land and development of Sherwood Manor. The loan commitment required that Jerry Kaiser, Moulton, plaintiff and their wives sign the note as guarantors in addition to the security of a deed of trust upon the properties.

A special meeting of shareholders of the Corporation was held on November 1, 1963. The minutes show the presence of Jerry Kaiser, Arthur Kaiser and David Moulton as constituting all of the shareholders of the Corporation. At the meeting those listed as shareholders voted to amend the Articles of Incorporation to authorize the issuance of 1,000 shares of $10.00 par value Class A non-voting common stock.

Articles of Amendment were executed bearing the same date.

A meeting of the directors of the Corporation was held immediately after the shareholders' meeting. Shown as directors were Jerry Kaiser, David Moulton and Norman Barken. The following matters that occurred at that meeting bear upon the issues to be discussed:

"The Chairman announced that Arthur Kaiser had rendered services to the corporation and upon motion duly made, seconded and unanimously carried, the proper officers of the corporation were authorized to issue to Arthur Kaiser 25 shares of the $10 par value common stock Class A.

"The Chairman then presented to the meeting the proposal to make certain loans from Roosevelt Savings and Loan Association relative to a proposed apartment project to be constructed by the corporation in St. Louis County. Thereupon, upon motion duly made, seconded and unanimously carried the proper officers of the corporation were authorized to execute said loan agreement with Roosevelt Savings and Loan Association and to do such other and varied matters as became necessary relative to the construction of said multiple dwellings."

Stock certificate number 1 for 25 shares "of the $10.00 par value Class A non-voting stock of Jerry Kaiser & Associates, Inc. fully paid and non-assessable," was issued to Arthur Kaiser. The Certificate of Amendment issued by the Secretary of State of the State of Missouri is dated December 10, 1963.

In accordance with the loan commitment from Roosevelt Savings & Loan Association, Arthur Kaiser the plaintiff, Jerry Kaiser, David Moulton and their wives signed the note covering the loan for development of Sherwood Manor. The note and a deed of trust as security for the loan were executed by the Corporation. The Corporation proceeded to develop the real estate. Construction began in January or February, 1964.

In late November or December of 1963 plaintiff went to work for another firm. His name appears as a stockholder who was present at the annual meetings of the Corporation on May 11, 1964, May 9, 1965 and May 9, 1966. The minutes of these meetings recite that they were held pursuant to waiver of notice. The waiver of notice was signed by all persons named as shareholders except plaintiff.

In 1964 and 1965 plaintiff made inquiry, as a shareholder, concerning the financial condition of the various real estate development companies in which he had been associated with his cousin including Jerry Kaiser & Associates, Inc.

■ We consider first defendants' complaint that the trial court's findings of fact and conclusions of law were insufficient and their request for a remand for further findings of fact. A reading of the argument leads us to believe that defendants frankly recognize that a failure to comply with a request for findings of fact does not constitute reversible error. On appeal factual issues will be considered to have been found in accordance with the result reached. *First Florida Building, Inc. v. Safair Systems, Inc.*, 570 S.W.2d 728, 730 (Mo. App.1978). Our review is governed by the oft repeated *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we will affirm if

the trial court has reached the correct result even though it might be for reasons not given by the trial court. *In Re M__ K__,* 493 S.W.2d 686 (Mo.App.1973).

Defendants' first substantive complaint is that the court erred in declaring that plaintiff was a shareholder in the Corporation because the stock issued to plaintiff constituted an overissue of stock, was ultra vires and therefore void.

■ Plaintiff counters that the defense of ultra vires is an affirmative defense that defendants did not plead. Defendants concede that they did not plead the defense but contend that the issue was tried without objection and therefore we must treat the answer as amended to include that defense. The plaintiff introduced into evidence the stock certificate showing that it was issued on November 1, 1963. He also introduced into evidence the Certificate of Amendment of the Secretary of State authorizing the amendment. This evidence was sufficient to present the issue. *Gathright v. Pendegraft,* 433 S.W.2d 299 (Mo.1968). We will determine the issue on the merits.

The Corporation is authorized to amend its Articles of Incorporation to create a new class of stock as was done in this case. § 351.085(10) RSMo 1959. As related to the issue here § 351.105 RSMo 1959 provided:

> "Upon the filing of the certificate of amendment and the issuance of the certificate by the secretary of state, the amendment shall become effective and the articles of incorporation shall be deemed to be amended accordingly."

■ The defendants are correct in their assertion that an overissue of stock is void. *Gonseth v. K & K Oil Company,* 439 S.W.2d 18 (Mo.App.1969). *Biedenstein v. St. Louis Janitor Supply Company,* 448 S.W.2d 916 (Mo.App.1969). It has also been held that irregularities in the issuance of shares of stock are not ultra vires and void. *Zobrist v. Estes,* 65 Or. 573, 133 P. 644 (1913).

In *Gonseth,* the two principal stockholders contributed additional funds to the corporation and certificates for common stock were issued to the two principal stockholders for the funds contributed. The stock issued was in excess of that authorized by the Articles of Incorporation. No steps were ever taken to amend the article to increase the authorized shares. The court held that the additional shares constituted an overissue and that those certificates were void.

In *Biedenstein,* the court held that preferred stock issued by the corporation that was not provided for in the Articles of Incorporation was void. In that case no steps were ever taken to authorize the issuance of such shares.

■ In the present litigation all of the shareholders in good faith adopted a resolution creating a new class of shares. Thereafter the directors unanimously voted to issue 25 shares of the new class of shares to plaintiff. The amendment to the Articles of Incorporation was transmitted to the Secretary of State some time thereafter. The Certificate of Amendment issued by the Secretary of State was dated December 10, 1963. All matters required of the shareholders were completed on November 1, 1963. The only matter remaining to be done was transmittal of the Articles of Amendment to the Secretary of State which was done. The stock was issued to plaintiff prior to the date that the certificate was issued by the Secretary of State.

The question of whether the premature issuance of stock is ultra vires had not been specifically ruled upon in this state. Nor have we found any recent cases that have addressed the issue presented in this case. In *Zobrist v. Estes, supra,* all of the capital stock of the corporation had been subscribed. The shareholders of the corporation adopted a resolution increasing the capital stock on October 30. The certificate of the resolution was filed with the Secretary of State and the certificate of amendment was issued on December 21 of the same year. Stock was issued prior to December 21. A statute provided that "it shall not be lawful to issue" any of the increase until the certificate of the amendment shall be filed with the Secretary of State. The court there held that the failure

to file the certificate of amendment before issuing stock certificates was an irregularity that does not void the issue where the corporation has the statutory authority to increase the stock but the formalities are not strictly complied with. See also *Man v. Boykin*, 79 S.C. 1, 60 S.E. 17 (1908) and *Davidson v. American Paper Mfg. Co.*, 188 La. 69, 175 So. 753 (1937) (where a resolution was duly passed and articles of amendment drawn and executed but never filed with the secretary of state). We find these authorities to be persuasive.

We believe that where a good faith effort is made to comply with the requirement to amend the corporate charter the premature issuance of stock is not ultra vires and void. In this case all of the stockholders unanimously voted passage of the resolution amending the Articles of Incorporation. The amendment was transmitted to the Secretary of State who issued the Certificate of Amendment within six weeks of the date the resolution was passed. The Corporation had the authority to create the new class of stock and increase the amount of stock it could issue. It complied with all of the requirements of the statute in drafting the Articles of Amendment. Upon presentation of the Articles of Amendment in proper form with the required fee, the Secretary of State was required to issue his Certificate of Amendment. See *State ex rel. Ely & Walker Dry Goods Co. v. Swanger*, 195 Mo. 539, 93 S.W. 932 (1906).

The premature issuance of stock in this case was an irregularity that did not void the plaintiff's interest in the corporation.

■■ It has long been held in Missouri that a share of stock is the actual property of the shareholder, an intangible property in the nature of a chose in action; the certificate of stock is a "muniment of title." Title to the shares may exist without the stock certificate, which is only evidence of the shareholder's property interest. *Duncan v. Kelly*, 435 S.W.2d 29, 33 (Mo.App. 1968).

■ Even if the delivery of the stock certificate had been ineffective because it was premature there is sufficient evidence to support a finding that plaintiff was a shareholder of the Corporation. The board of directors, consisting of defendant Moulton, Jerry Kaiser, and Norman Barken, unanimously passed a resolution granting plaintiff 25 shares of the new issue of stock in the company. This resolution was never rescinded. The Secretary of State issued the Certificate of Amendment authorizing issuance of the new class of stock. Thereafter plaintiff was recognized as a shareholder at the annual meetings of the company in 1964, 1965 and 1966. The minutes of the meetings for those years recite that plaintiff along with Jerry Kaiser and Mr. Moulton, being all of the shareholders of the company, were present. Defendant Moulton, who signed the minutes as secretary, would impeach his own minutes by now arguing that plaintiff did not sign the waiver of notice and by testifying that plaintiff was not present. Whether plaintiff was present does not belie the fact that the Corporation and the other shareholders recognized plaintiff as a shareholder of the Corporation. Thus there was sufficient evidence aside from the certificate of stock to show that plaintiff was a shareholder.

■ Defendants next contend that the issuance of 25 shares of stock to plaintiff was void because it violated the provisions of Art. XI, § 7 of Missouri Constitution, 1945, which in relevant part reads as follows:

> "No corporation shall issue stock, or bonds or other obligations for the payment of money, except for money paid, labor done or property actually received; and all fictitious issues or increases of stock or indebtedness shall be void; provided, that no such issue or increase made for valid bona fide antecedent debts shall be deemed fictitious or void." [1]

1. A similar provision is found in § 351.160(1) RSMo Supp.1963 which was in effect at the time.

It is defendants' position that there is no substantial evidence from which the trial court could have found "that plaintiff gave valuable consideration [for his shares in the company]."

Defendants argue that the weight of the evidence precludes any finding that plaintiff actually paid for the stock or that plaintiff actually rendered services to the Corporation prior to the issuance of the stock.

The plaintiff testified that he paid for the stock by check but because of the length of time that had passed he had destroyed all of his cancelled checks that he had written in the year 1963. He was cross-examined concerning his deposition in which he testified:

"ANSWER: No; I don't remember how it was paid. I could very well have paid it by check. I don't remember. It's been too long to remember that.

QUESTION: Do you know, though, that you did pay money for your stock?

ANSWER: No. I think I did. I know it wasn't cash. If I paid, it would have been by check."

Plaintiff concluded that he could not remember exactly because the events occurred so long ago.

The attorney who had represented plaintiff in 1964 and 1965 in his efforts to inspect the books and records of the company testified that plaintiff told him at that time that he had received the shares for services rendered.

On direct examination Mr. Moulton testified that he did not recall plaintiff presenting a check to the Corporation for his shares in the company. Mr. Moulton was then asked, "[t]o your knowledge do the books and records of the company reflect a receipt for a capital consideration from Mr. Kaiser?" An objection to this question was sustained on the ground that the books and records of the Corporation would be the best evidence. The record reveals that attempts by plaintiff to obtain or to view the books and records of the Corporation had previously been denied by the court upon defendants' motion for a protective order. It was defendants' position that plaintiff was not entitled to view the books and records of the company until plaintiff had proven that he was a shareholder. Although Mr. Moulton testified that he "personally" did not have the books and records of the Corporation it was admitted by the pleadings that he was its chief officer, a director and that he had charge of its books. Although the trial court expressed a desire to see the records, defendants did not produce the books and records that would bear upon the issue.

When we consider plaintiff's testimony along with the inference which the trial court could reasonably draw from defendants' failure to produce the corporate records that would reflect the capital accounts of the Corporation, we conclude that the court could reasonably have found that plaintiff paid for the stock by check.

We are also of the opinion that the trial court could have found that the plaintiff's shares were issued for "labor done." The minutes of the board of directors, on November 1, 1963, reflect the presence of Jerry Kaiser, the predecessor of defendant Patricia Kaiser's interest in the Corporation, David Moulton and Norman Barken as all of the directors of the Corporation. Defendant Patricia Kaiser was also present at the meeting. At this meeting Jerry Kaiser as chairman "announced that Arthur Kaiser had rendered services to the corporation" and the members of the board unanimously authorized the issuance of 25 shares of $10.00 par value Class A common stock. The stock as issued stated that it was "fully paid and non-assessable."

It is conceded that plaintiff is the person who learned of the availability of the initial tract of land that was developed into Sherwood Manor. He brought the matter to the attention of Jerry Kaiser and David Moulton, the shareholders of the Corporation. Jerry Kaiser & Associates, Inc. was obviously a thin corporation and it was logical that the loan commitment from Roosevelt Federal Savings & Loan Assn. required all shareholders and their wives sign the note for $404,000 as a condition to obtaining the loan. The trial court could reasonably find

that the commitment preceded the meeting of November 1, 1963 because the directors took action authorizing the closing of the loan transaction on that date. Plaintiff and his wife signed the note fulfilling his obligation as a shareholder.

As set out in the statute, "[i]n the absence of actual fraud in the transaction, the judgment of the board of directors or the shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive." § 351.185(3) RSMo 1978. *Saigh v. Busch*, 403 S.W.2d 559 (Mo.1966). When we consider that the par value of the shares issued to plaintiff amounted to only $250.00 it would not be unreasonable for the court to conclude that plaintiff's efforts in finding a major portion of the property used in developing Sherwood Manor was sufficient consideration for the issuance of the 25 shares of stock.

The question of the credibility of the witnesses was for the trial court. *Kim Mfg., Inc. v. Superior Metal Treating, Inc.*, 537 S.W.2d 424 (Mo.App.1976). The findings of the court were not explicit but in view of the fact that there was sufficient evidence from which the court could have found for plaintiff on either theory, we will not disturb the judgment of the trial court on this issue.

We also believe that the present defendants were in no position to complain because all those directors, who aside from plaintiff were also all of the shareholders, took part in the issuance of the shares of stock to plaintiff. They voted to issue the shares to plaintiff and signed the certificate of stock. They may not take advantage of the alleged failure to comply with the law. *St. Louis Charcoal Co. v. Moore*, 178 Mo. App. 692, 162 S.W. 745 (1913); *Bucklew v. Pyron*, 153 Mo.App. 673, 134 S.W. 1064 (1911).

The trial court did not err in declaring that plaintiff is the owner of the shares represented by the certificate of stock issued to plaintiff.

As a final issue defendants contend that the trial court erred in failing to dismiss plaintiff's petition for non-joinder of parties-plaintiff.

Defendants' contention is based upon the fact that plaintiff had endorsed the stock certificate, that had been issued to him by the Corporation, to himself and his wife as joint tenants with the right of survivorship. The endorsement was dated December 22, 1966. The certificate was never presented to the Corporation for transfer on its books.

At the close of the case, defendants moved to dismiss plaintiff's petition for non-joinder due to the failure of plaintiff to join his wife, Sandra Kaiser. Upon filing of memoranda, the motion and the cause were taken as submitted.[2]

The trial court entered its judgment for plaintiff and thus overruled defendants' oral motion to dismiss.

Defendants argue "that joint tenants to property cannot sue separately for themselves but must join in all actions respecting the estate." The cases cited by defendants for this proposition of law antedate Rule 52.04 RSMo 1978[3] which is controlling in

---

2. The motion was timely under Rule 55.-27(g)(2).

3. "52.04 *Joinder of Persons Needed for Just Adjudication*

　　(a) *Persons to be Joined if Feasible.* A person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise incon-

sistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

　　(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's

this case. The thorough scholarly discussions of the rule in *Kingsley v. Burack*, 536 S.W.2d 7 (Mo. banc 1976) and *State ex rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188 (Mo.App.1977) need not be repeated here.

The rule provides the criteria under subdivision (a) for the determination of who should be made parties to the litigation if feasible and under subdivision (b) for the determination of who must be made a party.

If the person does not come within the criteria of subdivision (a) the party need not be joined and no consideration need be given to subdivision (b).

In the case before us, the stock certificate provides that the shares are "transferable only on the books of the Corporation by the holder thereof in person or by attorney upon surrender of this certificate properly endorsed." As between plaintiff and his wife the transfer may be valid. The stock certificate, however, was never presented to the Corporation for transfer and as between Sandra Kaiser and the Corporation she has no interest in the Corporation. See *State ex rel. Manlin v. Druggists' Addressing Co., Inc.*, 113 S.W.2d 1061, 1065 (Mo. App.1938).

The primary issues in the case, as discussed above, concerned the validity of the issuance of shares of the company to Arthur Kaiser, the plaintiff in this cause. Following the criteria of Rule 52.04(a) we can say that complete relief could be and was accorded among those who are presently parties to the action in the absence of Sandra Kaiser. Rule 52.04(a)(1). The result in this case did not and could not have impaired or impeded her ability to protect her interest. Plaintiff was declared to be the "legal and registered" owner of the stock. Until the stock is transferred as provided by the certificate of stock, plaintiff will have the legal title to the stock as between himself and the Corporation and third parties.

Sandra was not a party to the action and any interest she may have is a matter that concerns Sandra and plaintiff and is not a proper subject of this action. Rule 52.-04(a)(2)(i). See *State ex rel. Emcasco Ins. Co. v. Rush, supra.* The judgment in this action, absent Sandra Kaiser as a party, does not impose any greater risk of double, multiple or otherwise inconsistent obligation by reason of any interest she may have in the shares held by her husband. Rule 52.04(a)(2)(ii). The trial court could have found, as it must have, that Sandra was not a person who should have been joined. It follows that she was not a person who must be joined.

Finding no error, the judgment is affirmed.

STEPHAN, P. J., and DOWD, J., concur.

absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."