**Jack ISAACS, Plaintiff,**

**v.**

**CHARTERED NEW ENGLAND COR-PORATION et al., Defendants.**

**No. 72 Civ. 2723.**

United States District Court,
S. D. New York.

June 28, 1974.

Kenneth M. Block, New York City, of counsel.

Leonard Toboroff, New York City, for defendant Chartered New England Corp.

Remsen Millham & Curran, by Edward F. Gentner, Jr., New York City, for defendant East River Savings Bank.

## OPINION

BONSAL, District Judge.

Plaintiff, Jack Isaacs, instituted this action on June 27, 1972 against Chartered New England Corporation ("Chartered"), Paul Tessler, and East River Savings Bank ("East River"), seeking to recover damages in the amount of $27,000 allegedly caused by 'the defendants' fraud in connection with the purchase by plaintiff of shares of common stock of Coatings Unlimited, Inc. ("Coatings").

Jurisdiction is alleged under section 22 of the Securities Act of 1933 ("the 1933 Act"), section 27 of the Securities Exchange Act of 1934 ("the 1934 Act"), and pendent jurisdiction. The action was tried to the Court without a jury.

The complaint contains two causes of action. In the first cause of action, Isaacs alleges that Chartered and Tessler (a registered representative employed by Chartered) "fraudulently induced plaintiff to purchase shares of stock of [Coatings], through the use of manipulative and deceptive devices and contrivances" in violation of the 1933 Act, the 1934 Act, the Rules of the Securities and Exchange Commission ("SEC") and common law. Isaacs also alleges that Chartered and Tessler, "with the aiding and abetting of [East River], arranged for an extension of credit to plaintiff to enable him to make payment for said purchase" in violation of section 7 of the 1934 Act and the Rules and Regulations of the Federal Reserve System. During the trial, the first cause of action was dismissed as to East River for lack of evidence.

In the second cause of action, Isaacs alleges that pursuant to the alleged scheme he received a check (which ac-

Demov, Morris, Levin & Shein, New York City, for plaintiff; Irving Bizar,

cording to the evidence was in the amount of $27,000) which he deposited in his account at East River; that he was thereafter advised by East River employees that the check had cleared and that he could withdraw on it; that he made withdrawals from the account; that the check was later returned for insufficient funds and his account was charged; and that he was required to make up the deficit in his account with a payment to East River of $27,000.

Isaacs is a guidance counselor employed by the New York Board of Education. Prior to his purchase of Coatings stock in November and December of 1971, he was a small investor. Before meeting Tessler in 1967 he had made only two purchases of stock, each of ten shares. After meeting Tessler, who was then a registered representative at F. I. DuPont & Company, Isaacs usually purchased approximately 50 or 100 shares of stock at a time, substantially all of which purchases were made through Tessler. Isaacs testified that a purchase of $2,000 of stock would be a very large purchase for him and that a typical purchase cost around $500.

In July of 1971, Tessler left F. I. DuPont & Company and joined Chartered, a member of the New York Stock Exchange, as a registered representative and over-the-counter trader. Tessler opened an account for Isaacs at Chartered, filling out the new account application form himself and giving Isaacs' investment objectives as "speculation" and "trading." Isaacs continued to make purchases and sales of stock through Tessler while he was employed at Chartered. Mr. Tessler's immediate supervisor at Chartered was Mr. Bob Blankopf, who did not testify at the trial; and the President of Chartered, Milton Bomback (who did testify at the trial) had overall supervisory responsibility for retail accounts and for the firm's trading. Chartered cleared through another brokerage firm, Dryfoos & Company.

On Sunday, November 21, 1971, Tessler telephoned plaintiff and recom-

mended a large purchase of Coatings shares. When Isaacs told Tessler that he could not afford such a purchase, Tessler told Isaacs that someone would loan him the money. On November 22, 1971, Isaacs purchased 2400 shares of Coatings at a total cost of $24,029.25. Isaacs was hesitant about making the purchase but agreed to do it when Tessler assured him that the transaction was legal and that the stock was going to "go ahead and appreciate." On the same day, November 22, 1971, Tessler and Isaacs met and Tessler gave Isaacs a check to Isaacs' order signed by James Feeney and drawn on The Royal Bank of Canada in the amount of $27,000. Isaacs had never met Feeney nor had he ever heard of him except through Tessler, who described Feeney as "a prominent person in the stock market." On November 24, 1971, Isaacs deposited the Feeney check in his savings account at East River.

Without prior authorization, Tessler sold 400 shares of Isaacs' Coatings stock on November 30 and 300 shares on December 1 and then purchased for Isaacs 200 shares of Coatings on December 3 and another 200 shares on December 6, 1971. On December 7, 1971, the SEC ordered a suspension of over-the-counter trading of Coatings stock "because of an unexplained rapid rise in the price of Coatings common stock which, according to management, [was] not justified by any developments in the business."

Prior to December 3, 1971, Tessler urged that Isaacs withdraw funds from his account and pay for the stock and also informed Isaacs that Feeney wanted $1,500 back, which amount was approximately half of the surplus that remained after the purchase of the 2400 shares of Coatings. On December 3, 1971, Isaacs withdrew $24,605.95 from his account, securing one bank check payable to Chartered in the amount of $23,102.25, in payment of the Coatings stock, and two bank checks payable to Tessler in the amounts of $850 and $650, which were to be delivered to Feeney. Isaacs thereafter delivered the three checks to

Tessler. While Isaacs testified that he intended to return the balance of the surplus to Feeney, there was no evidence that this was ever done.

On December 21, 1971, First National City Bank (East River's depositary bank) informed East River that the $27,000 check had been dishonored for "insufficient funds," and on the same day, East River so informed Isaacs and charged his account. On December 23, 1971, Isaacs borrowed $25,000 from his fiancee, Mrs. Helen Graf, the proceeds of which (together with $2,000 from his own account) he paid to East River to make up the deficit in his account.

Feeney testified at the trial that Coatings was a corporate shell with no assets nor liabilities but whose shares were publicly traded. Feeney related how in the fall of 1971 he, Tessler, and others were trying to cause an active market in the stock of Coatings in order to raise its price with a view to a later merger of America's Productions, Inc. (a private corporation engaged in the production of films and Latin American radio programs for the American market) with Coatings. Tessler and Feeney pleaded guilty before Judge Gurfein to an indictment charging them with conspiracy to commit violations of the securities laws in connection with their scheme to manipulate the market in Coatings stock. United States v. Feeney et al., 73 Cr. 747, (S.D.N.Y.) (Feeney pleaded guilty on November 13, 1973, and Tessler, on December 18, 1973). On December 17, 1971 Tessler was discharged from his employment at Chartered "as a result of a failure to properly oversee customer accounts." Tessler did not testify at the trial, nor did he enter an appearance in this action. However, he did give a pretrial deposition. During November and December of 1971, while Feeney, Tessler, and others were manipulating the market in Coatings stock, Chartered was acting as a "market maker" for Coatings stock.

## CHARTERED NEW ENGLAND CORPORATION

Isaacs contends that Chartered is liable for misrepresenting and misleading him as to its own activities as a market maker in Coatings stock and for its failure to restrain or properly to supervise Tessler.

There was no evidence presented at the trial that Chartered conducted any investigation with respect to Coatings prior to becoming a market maker other than looking at the "pink sheets" to see whether other firms were also making a market. Mr. Bomback stated in his deposition that Chartered relied on the judgment of Tessler as a trader to determine whether to make a market in Coatings stock. Mr. Bomback testified at the trial that he checked the daily computer run on transactions by Tessler and consequently could have seen unusual market activity in Coatings stock, which Tessler described in his deposition as "like a yo-yo, it would go up for a couple of days and then come down a little bit and then go right back up."

With respect to Chartered's supervision of Tessler, Tessler stated in his deposition that there was "no real formal going over of the accounts [of his activities as a trader] except perhaps at the end of the month . . . They said it was a good month or a bad month and then they gave me a statement of the profit and loss." Tessler also stated that he did not know how Chartered supervised his activities as a registered representative nor "whether they did or they didn't." Mr. Bomback testified that Mr. Blankopf was responsible for supervising Tessler, but Mr. Blankopf was not called to testify. Mr. Bomback also testified that in his checking of the daily trading runs, he noticed Isaacs' purchase of 2400 shares of Coatings stock and called it to the attention of Mr. Blankopf, who said he would check it out. There was no evidence, however, that he followed up on the matter nor that Mr. Blankopf took any further ac-

tion on it. There was also no evidence that anyone examined the due diligence file kept by Mr. Tessler.

■■ A broker-dealer owes a duty to the public to supervise its employees in an adequate and reasonable manner. See Lanza v. Drexel & Co., 479 F.2d 1277, 1301 (2d Cir. 1973) (en banc); Hecht v. Harris, Upham & Co., 430 F.2d 1202 (9th Cir. 1970); SEC v. Lum's, Inc., 365 F.Supp. 1046, 1064 (S.D.N.Y. 1973); Moerman v. Zipco, Inc., 302 F. Supp. 439 (E.D.N.Y.1969), aff'd on opinion below, 422 F.2d 871 (2d Cir.), petition for rehearing denied by opinion, 430 F.2d 362 (2d Cir. 1970). On the basis of the foregoing, the Court finds that plaintiff has established that chartered did not sufficiently discharge its duty to supervise its registered representative, Tessler.[1]

Chartered contends that Isaacs was a member of the scheme to manipulate the market for Coatings stock and that his "activities place him in pari delicto with Tessler and bar him from any relief whatsoever." The evidence brought out at the trial, however, is insufficient to support this contention. Isaacs testified at the trial and the Court had an opportunity to judge his credibility. The Court finds that Isaacs was an unsophisticated investor who relied on Tessler's advice in his purchases and sales of stock. While he was unwary and placed unwarranted trust in Tessler, the Court credits the testimony of Isaacs that he was unaware of the scheme being carried out by Tessler, Feeney, and others, and Mrs. Elaine Schwartz, a character witness, testified that Isaacs' reputation in the community for truthfulness and veracity was excellent.

In view of the foregoing, the Court concludes that Isaacs is entitled to recover from Chartered the damages proximately caused by Chartered's failure properly to supervise Tessler, see Smith v. Bear, 237 F.2d 79, 87–88 (2d Cir. 1956), which damages are in the amount of $21,452.25, plus interest from November 22, 1971. The damages are calculated as follows:

| | |
|---|---|
| The amount paid by Isaacs to Chartered for Coatings stock | $23,102.25 |
| Plus the amount paid by Isaacs to Tessler to be forwarded to Feeney | 1,500.00 |
| | $24,602.25 |
| Less the fair market value (1½ per share as of June 27, 1972) of the 2100 shares Isaacs presently owns | 3,150.00 |
| | $21,452.25 |

### EAST RIVER SAVINGS BANK

Isaacs contends that when he withdrew $24,605.95 from his account at East River, he had been advised by bank employees that the Feeney check had "cleared" and that by permitting him to draw upon it, East River failed to use ordinary care as required by sections 4–202(1) [2] and 4–103(5) [3] of the Uniform Commercial Code ("U.C.C.") (Mc-

1. It is unnecessary to determine whether liability is premised on the basis of respondeat superior or on the basis of section 20(a) of the 1934 Act since plaintiff has shown that Chartered was "at fault" in its failure to supervise Tessler. Cf. SEC v. Lum's, Inc., supra at 1061–1064.

2. U.C.C. § 4–202(1) (McKinney 1964) provides:

A collecting bank must use ordinary care in
(a) presenting an item or sending it for presentment; and
(b) sending notice of dishonor or non-payment or returning an item other than a documentary draft to the bank's transferor or directly to the depositary bank under subsection (2) of Section 4–212 after learning that the item has not been paid or accepted, as the case may be; and

(c) settling for an item when the bank receives final settlement; and
(d) making or providing for any necessary protest; and
(e) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

3. U.C.C. § 4–103(5) (McKinney 1964) provides:

The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

Kinney's Consol.Laws, c. 38, 1964), and that East River lost its right to charge back the amount of the uncollected Feeney check under sections 4–212(1) and (4) [4] of the U.C.C. (McKinney 1964).

Isaacs opened a savings account at East River on March 18, 1971. He made regular deposits and withdrawals from the account. On November 24, 1971, Isaacs deposited the $27,000 Feeney check, and on that same day East River forwarded it to its depositary, First National City Bank. Isaacs testified that at the urging of Tessler for payment of Coatings stock, he went to East River around the beginning of December and asked a teller whether the check had cleared and whether he could withdraw approximately $24,000. Isaacs testified that the teller said he could make such a withdrawal, and that soon thereafter he telephoned Mr. Fennell (an officer at East River), who also told him that he could make a withdrawal against the check. The next day, December 3, 1971, he went in to the bank and withdrew $24,605.95.

East River employees testified that as a general rule checks drawn on a foreign bank, such as The Royal Bank of Canada, would take ten days to clear but that if the depositor had an established account and if only a day or two remained before the end of the ten-day period, a depositor would be permitted to withdraw funds against an uncleared check. The teller who handled the December 3 withdrawal, Mr. Eslinger, testified that he told Mr. Isaacs on December 3 that the check had not yet cleared but that, with the approval of a supervisor, he could permit Isaacs to withdraw against it. Mr. Eslinger testified that he received approval and completed the withdrawal.

■ The payment to Isaacs of $24,605.95 on December 3, 1971 against uncollected funds was a "provisional settlement" made by East River. As such, when East River failed to receive final settlement on the $27,000 Feeney check, it was entitled to charge-back that amount to the account of its depositor, Isaacs. *See* U.C.C. § 4–201 (McKinney 1964); 622 West 113th Street Corp. v. Chemical Bank New York Trust Co., 52 Misc.2d 444, 276 N.Y.S.2d 85 (Civ.Ct., N.Y. County 1966). The Court finds that Isaacs was informed that the check had not cleared on December 3, 1971, and that he was permitted to withdraw against it pursuant to East River's standard practice since the ten-day period was due to have elapsed on the next day. East River promptly deposited the check with First National City Bank on November 24, and on December 21 promptly notified Isaacs when the check was returned as dishonored. On the basis of all the evidence, the Court finds that plaintiff has not proved that East River failed to use ordinary care with respect to the transactions involving the $27,000 Feeney check. Accordingly, defendant East River is entitled to judgment against plaintiff dismissing the second cause of action as against it.

The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Settle judgment on notice.

---

4. U.C.C. § 4–212 (McKinney 1964) provides:
(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final . . . .
\* \* \* \* \*
(4) The right to charge-back is not affected by
(a) prior use of the credit given for the item; or
(b) failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable.