**Anthony CHASE, Plaintiff,**

v.

**MORGAN GUARANTEE TRUST CO., Defendant.**

**No. 82 Civ. 2564 (DNE).**

United States District Court, S.D. New York.

Aug. 13, 1984.

Robert Poulson, New York City, for plaintiff.

Davis Polk & Wardwell, New York City, for defendant; Donald Dirks, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

The plaintiff, Anthony Chase ("Chase") was a partner in the now dissolved firm of Tufo, Johnson, Zuccotti & Chase ("the firm"), which had an attorney's escrow account with the defendant, Morgan Guaranty Trust Company ("the Morgan bank"). This action arises from a bad check that Chase deposited in this account. He withdrew against it provisionally, and when the check bounced, the Morgan bank charged it back against the account. Chase has sued the bank to recover funds allegedly converted, and the bank has moved for summary judgment pursuant to Fed.R.Civ.P. 56 and for dismissal pursuant to Fed.R.Civ.P. 12.

## FACTS

On December 7, 1979 Chase received a $100,000 check ("the check") for one of his clients, but payable to him. The check was drawn by Galaxy Records Ltd. on The Bank of Nova Scotia ("Scotiabank"), Grand Cayman Island branch. Chase endorsed the check to the firm and had the check deposited in the firm's attorney's escrow account maintained at the Morgan bank.

For ten days thereafter, Chase had either his New York Office manager, Julian Dragowetz ("Dragowetz") or an associate attorney in his Washington office, Chester Shields ("Shields"), call the Morgan bank daily to inquire whether the check had cleared. On each occasion the caller was

informed that the bank did not know if the check had cleared.

On December 17 Chase had the funds transferred to First Los Angeles Bank, Los Angeles, California for the account of A.M. Sarkissian.

On December 28, 1979 Scotiabank dishonored the check and returned it to the Morgan bank. Dragowetz was immediately notified.[1]

On January 18, 1980 the Morgan bank debited the firm's account for the $100,000 on the check that was uncollected. Chase went to California and recovered $50,000 of the funds transferred to his client, A.M. Sarkissian. At that point $100,000 had been deposited, $100,000 had been transferred, $100,000 had been charged back and only $50,000 had been returned leaving the firm with a shortfall of $50,000 in its account. Thereafter Chase personally reimbursed the firm's escrow account for this $50,000 shortfall.

Chase is now suing the Morgan bank to recover the $50,000 that he put up to reimburse the firm's attorney's escrow account. Chase alleges that the Morgan bank's vice president, John Halpin, negligently misled him into believing that the check would clear. Chase argues that this is a ground for holding the Morgan bank liable for the funds charged back to the firm's account.

## DISCUSSION

Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56 and has filed the requisite Rule 3(g) statement pursuant to the Civil Rules of the Local Rules of the Southern District of New York. A judgment sought pursuant to Rule 56 "shall be rendered ... if the pleadings, depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact ...." A brief review

of the governing law is necessary to determine whether there is any issue of material fact.

■ Under the Uniform Commercial Code ("UCC") § 4–201, prior to final settlement, the collecting bank is merely the agent for collection of the check deposited by the owner and any settlement is provisional. A final settlement can be effected in the ways set out in UCC § 4–213. Hence, if the collecting bank has credited a customer's account for an item and even allowed the customer to make a provisional withdrawal, but fails to receive a final settlement for that item, it may charge back the customer's account. UCC § 4–212.

Chase's claim rests upon UCC § 4–212(4), which provides, "The right of charge-back is not affected by ... failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable." This provision clearly makes a collecting bank liable up to the amount of charge-back if it has failed to exercise ordinary care "with respect to the item." Chase contends that the Morgan bank's employees' statements and omissions, which misled Chase to believe that the check was going to clear, constituted failure to exercise ordinary care "with respect to the item." Hence, Chase contends, the Morgan bank is liable up to the amount of the charge-back.

The Morgan bank has submitted an extensive record of exhibits, affidavits and deposition transcripts. When a motion for summary judgment is made and supported in this fashion "an adverse party may not rest upon the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue" of material fact. Fed.R. Civ.P. 56(e). Distilling Chase's brief and affidavit,[2] the court finds three "specific

---

1. On December 28, 1979 Dragowetz deposited a second $100,000 check from Galaxy Records Ltd. to replace the previously dishonored check. The second check was also deposited in the firm's attorney's escrow account. Scotiabank subsequently dishonored and returned the second check also. Dragowitz was immediately

notified. Chase makes no claim with regard to the second check.

2. Chase did not submit a Rule 3(g) "statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Civil Rule 3(g) of the Local Rules of the Southern District.

facts" advanced by Chase in support of his contention that he was negligently misled.

First, Chase states, "I have learned that domestic banks usually caution their customers not to rely on Cayman Island checks for at least three weeks.... The defendant did not warn [the firm] or me personally of the regular and well known delay often experienced with Cayman Island checks." Affidavit of Anthony Chase in Opposition to Motion, sworn to June 27, 1983, ¶ 9 and 10.

Second, Chase points out that his associate attorney, Shields, stated in a deposition, "[the vice president of Morgan bank] informed me that ... they would have known if [the check] had not been good; that they would have had it back in the ordinary course of business by then [ten days after the original deposit]." Deposition of Chester Shields, exhibit F to the Affidavit of Donald Dirks, sworn to May 20, 1983 in support of defendant's motion for summary judgment ("Shield's deposition"), 18.

Third, Chase points out that Shields stated in answer to a question whether the Morgan bank vice president had told Shields that the check had cleared, "In those words, no. In the clear import of what he said, I believed him to have told me yes." Shield's deposition, 19.

The third point is subsumed in the second. Shields does not offer any further specifics on what the vice president said that led Shields to believe that the check had cleared. The only specific statement he offers, was the one cited in the second point. Therefore, Chase's entire argument rests upon the capacity of two specific facts—(1) that the vice president did not warn him of the usual delay with Grand Cayman checks, and (2) that the vice president said that usually a bad check was returned before ten days—to establish that there is a genuine issue of fact as to whether the Morgan bank failed to exercise ordinary care with respect to the check under UCC § 4-212(4).

In a reply brief Morgan disputes these two facts, but this dispute does not raise an issue of "material" fact because even Chase's version of these two facts and his conclusion therefrom—that he was misled into believing that the checks had cleared—does not establish that the Morgan bank was negligent within the meaning of UCC § 4-212(4). The clear language of UCC § 4-212(4) holds a bank liable for a charge-back only if the bank has been negligent "with respect to the item." No mention is made of its communications to its customers. The provision holds the bank liable for a charge-back only when the bank's negligence *causes* the dishonor that requires charge-back. "Allowing an overdraft generally does not constitute a failure by a bank to exercise ordinary care." *Bank of Commerce v. De Santis*, 451 N.Y. S.2d 974, 980, 114 Misc.2d 491 (Civ.Ct., Kings County 1982). The Official Comment to § 4-212(4) states, "It is clear that the charge-back does not relieve the bank from any liability for failure to exercise ordinary care *in handling* the item." UCC § 4-212 Official Comment # 6 (emphasis added).

This interpretation is not unfair to customers. Chase knew when he transferred the funds that he received only a provisional credit. A provisional credit by definition is one that is charged back if the crediting bank is unable to collect on the underlying item, UCC § 4-212(1). *Isaacs v. Chartered New England Corporation*, 378 F.Supp. 370, 375 (S.D.N.Y.1974); *622 West 113th Street Corp. v. Chemical Bank New York Trust Co.*, 52 Misc.2d 444, 276 N.Y.S.2d 85 (Civ.Ct., N.Y. County 1966). Under this clear law, when customers receive a provisional credit, they know it will be charged back if the underlying instrument does not clear. In other words, the fact that a bank expressly gives provisional credit, rather than making a final settlement, by definition puts its customer on notice that the item might not clear, and that if it fails to clear, any provisional settlement will be charged back.[3]

---

3. Furthermore, banks have nothing to gain by

misleading customers into believing that un-

Even if this court interpreted § 4–212(4) to hold a bank liable for charge-back in the case of mere negligent statements as to the likelihood that a deposited item would clear, this court's independent review of the substantial record submitted on this motion indicates that there is no genuine issue as to whether the Morgan bank's actions constitute negligence.[4]

Chase does not deny that he knew he received merely a provisional credit. In addition, Chase's associate, Shields, who relayed communications between Chase and the Morgan bank's vice-president, said that the bank vice president

did say that a phone inquiry to the Cayman Islands branch had elicited a response; under bank secrecy laws, they are not permitted to indicate whether the check had cleared or not.... We were told that the Bank of Nova Scotia would not confirm or deny.

Deposition of Chester Shields, exhibit F to the Affidavit of Donald Dirks, sworn to May 20, 1983 in support of defendant's motion for summary judgment ("Shield's deposition"), 18–19. Shields further stated, in answer to a question of whether he had told Chase that the check had cleared,

No. In fact, I made a point of telling Mr. Chase that I had asked [the vice president] when he would know when the check had cleared, would he receive any advice to that effect. He said no he would never receive a credit advice. I relayed this fact, as well as [the vice president's remark that a bad check would have been returned by then] to Mr. Chase and, on that he told me to authorize the wire transfer.

Shield's deposition, 26–27 (as changed by deponent at signing).

In addition, Dragowetz, Chase's New York office manager, who spoke with Morgan bank employees daily, stated,

on each of those occasions I was informed that Morgan had not obtained verification that the check had been paid, and I so notified Chase [or Shields].

Affidavit of Julian Dragowetz, sworn to May 6, 1983, attached to Affidavit of Donald Dirks sworn to May 20, 1983 in support of defendant's motion for summary judgment ("Dragowetz Affidavit"), ¶ 5. In addition, Dragowetz stated,

I ... suggested [to Shields] that transfer from [the firm's] account of the $100,000 deposit not be made until payment of the check had been confirmed by Scotiabank. *Id.* at ¶ 6.

In the face of these undisputed statements, the two facts—(1) that no bank official cautioned Chase about delays in Grand Cayman checks; and (2) that the vice president remarked that a bad check usually was returned in ten days—simply do not amount to negligence.

■ Even where the facts are clear a court should not grant summary judgment if conflicting inferences, such as negligence, can be drawn from those facts. *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979); *Doe v. United States Civil Service Commission,* 483 F.Supp. 539, 555 (S.D.N.Y.1980). Here, however, no reasonable trier of fact could find that the Morgan bank was negligent in these circumstances for the one statement and the one omission. Chase knew that the credit he received was not a final settle-

---

cleared items have cleared. Indeed, banks are usually overly cautious in giving provisional credit precisely because of the uncertainty of uncollected items. A bank could be liable for a misstatement in these general circumstances if the misstatement were part of a scheme to defraud a customer in Chase's position by, for example, a conspiracy between the bank and the party to whom Chase transferred the funds. This of course is merely one example. As discussed *supra,* however, § 4–212(4) simply does not hold liable for charge-back a bank whose employee inadvertently in some remark mis-

leads a customer as to the precise liklihood that an item will clear.

The outcome might be different if a bank expressly informed a customer that it had made a final settlement on the account, but that is not the case here.

**4.** Summary judgment is generally inappropriate where no discovery has taken place. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). *Murrell v. Bennett,* 615 F.2d 306 (5th Cir.1980). Here the parties have completed discovery.

ment and hence that a possibility existed that the check would not clear. The gravamen of Chase's complaint therefore is that a statement and an omission by the bank over the course of daily discussions about this check led Chase to miscalculate the probability that the check would clear.[5]

## CONCLUSION

The "depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The defendant's motion for summary judgment dismissing the complaint with prejudice is granted. The defendant's motion for costs is denied.[6] Each party will bear its own costs.

SO ORDERED.

---

5. On the facts in this case, this court should not speculate as to what actions might constitute negligence were § 4–212(4) to be interpreted as holding a bank liable for a charge-back based on a negligent statement to a customer. Nevertheless, it is important to note that banks are financial service institutions and are not primarily involved in the international informa-tion business. The bank might have a greater responsibility to an unsophisticated customer, but that is not the situation presented here.

6. The court's decision herein means that it need not reach the other issues raised in the defendant's motion.