**SOUTHSIDE NATIONAL BANK, Plaintiff–Respondent,**

v.

**Carl HEPP and Kay Hepp, Defendants–Appellants.**

**No. 69270.**

Supreme Court of Missouri. En Banc.

Nov. 17, 1987.

John Campbell, David L. Campbell, St. Louis, for defendants-appellants.

John B. Singleton, St. Louis, for plaintiff-respondent.

ROBERTSON, Judge.

Southside National Bank brought an action to recover funds paid by cashier's check purchased with funds withdrawn from an account of Mr. and Mrs. Hepp in which there were insufficient funds. The trial court sustained the bank's summary judgment motion. The Court of Appeals, Eastern District, reversed and remanded. We granted transfer to consider the extent of a bank's rights to charge back its customers' accounts for items placed in deposit and subsequently dishonored by payor banks under Section 400.4–212, RSMo 1986. Our jurisdiction is founded on Mo. Const. art. V, sec. 10. Affirmed.

**I.**

Appellants, Carl and Kay Hepp, opened an account with respondent Southside National Bank (Southside) on September 25, 1985, with three checks drawn on an account of Clara Schmit at the Centerre Bank. The checks were payable to Kay Hepp and totaled $90,715.00. Because the deposit was presented after banking hours, the checks were deemed to have been presented on September 26. On October 2, 1985, Southside received notice of the dishonor of the checks from Centerre. Southside's records indicate that it charged back $90,715.00 against the Hepps' account on October 2. On that same day, October 2, Carl Hepp withdrew $34,965.10 from the account and purchased a cashier's check in that amount, which he used to purchase real estate. On October 2, Southside, within the Section 400.4–212 midnight deadline, sent notice of the dishonor of the Schmit checks to the Hepps. The cashier's check was paid on October 4 and the Hepps' account debited in the amount of $34,-965.10, according to Southside's records. In addition, Southside appropriated the entire balance of Mr. Hepp's separate business account. On October 6, the Hepps received the bank's notice stating that the Schmit checks had been returned for insufficient funds, and that their account was being charged back $90,715.00.

Southside brought this action to recover the $34,965.10 which the Hepps claim it negligently disbursed. The Hepps counterclaimed for the conversion of Mr. Hepp's business account.

The Hepps filed separate Motions for Summary Judgment on November 27, 1985. Southside responded with a Motion for Summary Judgment on December 13, 1985. The trial court heard arguments on the parties' respective motions, March 7, 1986. Following the hearing, on March 14, 1986, Southside filed an amended Motion for Summary Judgment. On March 27, 1986, without additional hearing, the trial court sustained Southside's amended motion and overruled the Hepps' motions. Mr. Hepp voluntarily dismissed his counterclaim without prejudice. The Hepps appeal the trial court's order.

**II.**

█ The issue is whether Section 400.4–212 authorizes Southside, which had already charged back the Hepps' account for

the insufficient funds checks, to charge back that account for the cashier's check purchased with funds withdrawn from the account.

The Hepps argue that since the Schmit checks were dishonored and charged back to their account before the funds were withdrawn to purchase the cashier's check, the settlement of the account became final and Southside's right to charge back terminated under Section 400.4–212(1). The issuance of the cashier's check was due to Southside's negligence, and according to the Hepps, they should not be charged with the bank's failure to exercise due care.

Section 400.4–212, which establishes the bank's right to charge back a customer's account, provides in pertinent part:

(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. *These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of section 400.4–211 and subsections (2) and (3) of section 400.4–213).*

\* \* \* \* \* \*

(4) The right to charge-back is not affected by

(a) prior use of the credit given for the item; or

(b) failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable.

(Emphasis added.)

The fallacy in the Hepps' argument is its assumption that the charge back of their account for the Schmit checks constituted a final settlement which terminated South-

side's right to obtain a refund under Section 400.4–212.

Section 400.4–104(1)(j), RSMo 1986, defines "settle" as *"to pay"* in cash, by clearing house settlement, in a charge or credit or by remittance, or otherwise as instructed. "A settlement may be either provisional or final." (Emphasis added). Section 400.4–213 establishes when an item is "finally paid." When read together, Sections 400.4–104(1)(j) and 400.4–213 lead us to conclude that there is no final settlement—and thus no termination of the right to charge back under Section 400.4–212(1)—until an item is finally paid within the meaning of Section 400.4–213. Dishonor of an item is not a final settlement. Provided it complies with presentment and notice requirements, the bank retains its right to charge back a customer's account until the settlement becomes final.

Although this is a question of first impression in this Court, other jurisdictions which have addressed this issue reach a similar conclusion. In *Allen v. Carver Federal Savings & Loan Ass'n*, 123 Misc. 2d 704, 477 N.Y.S.2d 537, 538 (Sup.1984), plaintiff maintained a savings account at the defendant bank. Plaintiff deposited a check in her account. Plaintiff inquired of bank employees on several occasions concerning the check and was eventually told that the check had cleared. Based on this assurance, plaintiff withdrew funds from her account. The original check was ultimately returned to defendant bank uncollected; the bank charged back plaintiff's account. Plaintiff sued the bank for negligence and conversion. The court said:

A bank may credit a customer's account with the amount of an item before final settlement and, in response to a specific request or as a matter of general procedure, may permit the customer to withdraw against it. That does not mean that the bank should be left without remedy against its customer if the bank does not ultimately receive final payment. [citation omitted]. The risk of loss continued in the plaintiff, not the agent bank, until settlement became final, and plaintiff cannot shift the risk of loss to the

bank by relying upon the statement of the teller or the fact that she was permitted to withdraw funds from her account. *Allen,* 477 N.Y.S.2d at 538–39. *Accord, Woodard v. First National Bank of Atlanta,* 159 Ga.App. 769, 285 S.E.2d 229 (1981); *Woodard v. First National Bank of Atlanta,* 159 Ga.App. 769, 285 S.E.2d 229 (1981); *Yoder v. Cromwell State Bank,* 478 N.E.2d 131 (Ind.App.1985); and *Bank of Commerce v. De Santis,* 114 Misc.2d 491, 451 N.Y.Supp.2d 974 (N.Y.City Civ.Ct.1982). *See also Burke v. Peoples Bank of New Jersey,* 172 N.J.Super. 539, 412 A.2d 1089, 1091 (1980). ("[U]ntil settlement becomes final, *i.e.,* until the payor bank has paid the item, the collecting bank has the right to charge-back the customer's account for the amount of the dishonored item and obtain a refund of any amounts withdrawn pursuant thereto.")

In this case, even if we assume that the charge back occurred prior to the withdrawal of funds, and the cashier negligently disbursed the funds from a zero-balance account, Southside retained its right of charge back under Section 400.4–212 until final settlement of the items. To hold otherwise would place Southside and other banking institutions in the untenable position of guaranteeing a customer's instruments whenever the bank gives a provisional settlement. It would also permit the unjust enrichment of bank customers who deposit insufficient funds checks in their accounts and, based on the bank's provisional settlement, make withdrawals prior to final settlement or notice of dishonor.

Under the plain meaning of Section 400.-4–212(1), the risk of loss on items deposited continues with the customer who deposits the item until settlement becomes final. The risk of loss does not shift to the agent bank when the bank exercises its right of charge back; the customer remains liable

for actions taken by the bank at the customer's request based on the provisional settlement. Nor does the risk of loss shift to the bank as a result of the bank's failure to exercise ordinary care in permitting its customer to withdraw funds from a zero-balance account. Section 400.4–213(4)(b).

The Hepps' point is denied.

### III.

■ The Hepps further contend that the trial court failed to grant them a hearing on Southside's amended summary judgment motion prior to sustaining the bank's amended motion. The Hepps claim prejudice since, they argue, the amended motion raised "additional issues of fact on which the trial court issued its order."

Rule 74.04(c) mandates that a motion for summary judgment be served on the opposing party "at least 10 days before the time fixed for the hearing." On this record, there is no dispute that the trial court did not conduct an additional hearing before sustaining Southside's amended motion. The trial court's order thus violated Rule 74.04.

The question remains, however, whether Southside's initial motion, on which the trial court conducted a hearing, is sufficient to support summary judgment. We conclude that it is.

Summary judgment serves to expedite the determination of controversies where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Rule 74.-04(c). Southside's amended motion simply incorporates statements into the body of the motion which were shown by affidavit and exhibits in the initial motion, or describes factual events which are not material to the resolution of Southside's motion.[1]

---

1. The amended motion incorporated the following changes: (1) The amended motion stated that the Schmit checks were payable to Kay Hepp. The original motion simply stated that the checks were payable to defendants. Copies of the checks were attached as exhibits to the original motion. They clearly showed Mrs. Hepp as the payee. (2) The amended motion recited the fact that Mr. Hepp delivered his withdrawal slip after the close of normal banking hours on October 2. (3) The amended motion recites that the notice of the dishonor of the Schmit checks was not posted until the evening of October 2, 1985, and was thus not available to bank employees until October 3. (4) The amended motion claims that the Southside employee who issued the cashier's check would not have been aware of the dishonor of the Schmit

The Hepps do not dispute the timeliness of Southside's presentment of the Schmit checks for payment or the timeliness of the bank's notice to the Hepps. Nor do the Hepps claim that the Schmit checks were finally paid within the meaning of Section 400.4–213. Instead, the Hepps claim that the completion of the charge back on the Schmit checks was a final settlement terminating Southside's rights under Section 400.4–212(1). We have denied the point. Under our analysis of Sections 400.4–212 and 4.213, the additional facts recited in the amended motion (*see* footnote 1) are not material to a determination of the rights of the parties in this case. Scrutinizing this record in the light most favorable to the Hepps, *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984), Southside's initial Motion for Summary Judgment is sufficient to support the trial court's order.

On appeal, this Court may affirm the trial court where it has reached the correct result even though the trial court's order states that it sustained the amended motion. *Cf. Kaiser v. Moulton*, 631 S.W.2d 44, 47 (Mo.App.1981). (An appellate court may "affirm if the trial court reached the correct result even though it might be for reasons not given by the trial court.") Southside's initial Motion for Summary Judgment disposes of all genuine issues of material fact. Southside has shown by unassailable proof that it is entitled to judgment as a matter of law on its initial Motion for Summary Judgment. Rule 74.-04(h). *Pitman Manufacturing Co. v. Centropolis Transfer Co.*, 461 S.W.2d 866, 872 (Mo.1971).

The judgment of the trial court is affirmed.

All concur.

checks when the cashier's check was issued since the dishonor was not posted until the following day. (5) The amended motion states that the normal practice in the banking industry in the St. Louis area requires seven days for a check to clear and be posted. (6) The amended motion states that the Hepps had been Southside customers for fifteen years and had opened this account for the primary purpose of depositing the Schmit checks. (7) The amended motion recites that the Hepps purchased real estate with the cashier's check.