■ SHIRLEY CALL et al., Respondents, v ELLENVILLE NATIONAL BANK, Appellant. [774 NYS2d 76]—

In an action, inter alia, to set aside certain transfers and a promissory note as unsupported by consideration, the defendant appeals from so much of an order of the Supreme Court, Orange County (Slobod, J.), dated March 3, 2003, as denied its motion for summary judgment dismissing the complaint and on its counterclaims.

Ordered that the order is modified, on the law, by (1) deleting the provision thereof denying those branches of the motion which were for summary judgment dismissing the complaint insofar as asserted by the plaintiff Asa Jay Call and on its counterclaims insofar as asserted against that plaintiff and substituting therefor a provision granting those branches of the motion, and (2) deleting the provision thereof denying that branch of the motion which was for summary judgment dismissing the complaint insofar as asserted by the plaintiff Shirley Call and substituting therefor a provision granting that branch of the motion except as to the causes of action alleging duress, undue influence, and overreaching; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiffs commenced this action, inter alia, to set aside the transfer of assets to, and the execution of a promissory note in favor of, the defendant bank to repay $74,000 that was transferred by wire, after a check that the plaintiff Asa Jay Call deposited into his account at the defendant bank to cover the transfer was found to be counterfeit. The check, purportedly issued by a company in Seattle, Washington, on an account with the Bank of America in North Carolina, was made payable to Mr. Call and he also authorized the wire transfer. The check and the wire transfer were allegedly part of a lottery scam by which Mr. Call was victimized. The defendant bank counterclaimed, inter alia, to enforce the promissory note. After significant disclosure, the defendant bank moved for summary judgment dismissing the complaint and for summary judgment on its counterclaims. The Supreme Court, inter alia, denied the motion. We modify.

In support of its motion for summary judgment dismissing

the complaint and for summary judgment on its counterclaims, the defendant bank demonstrated a prima facie entitlement to judgment as a matter of law.

In general, the relationship between a bank and customer is that of debtor and creditor and, without more, is not a fiduciary relationship, even if the parties are familiar or friendly (*see Bennice v Lakeshore Sav. & Loan Assn.*, 254 AD2d 731 [1998]; *Chimento Co. v Banco Popular de Puerto Rico*, 208 AD2d 385 [1994]). The relationship is controlled by, inter alia, article 4 of the Uniform Commercial Code (hereinafter the UCC). The UCC represents " 'the ultimate distillation of a painstaking process of evolution, pursuant to which the risk of loss in commercial matters has been attempted to be adjusted in a fair and equitable manner' " (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340, 348 [1989], quoting *Five Towns Coll. v Citibank*, 108 AD2d 420, 429-430 [1985]). The Court of Appeals, in cautioning the courts in general not to "unsettle the UCC's carefully drawn balance by introducing comparative fault principles taken from tort law," noted that the UCC serves the "important objective not shared by the law of torts" of promoting certainty and predictability in commercial transactions (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., supra* at 349). Indeed, the Court of Appeals noted, by "prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but increases certainty in the marketplace and efficiency in dispute resolution" (*id.* at 349).

Here, the defendant bank was the "collecting bank" within the meaning of the UCC for the subject check (UCC 4-105 [d]; *see Hanna v First Natl. Bank of Rochester*, 87 NY2d 107 [1995]). As such, it was, in the absence of a clear intent to the contrary, which is here not present, the agent of Mr. Call for the collection of the check until "final settlement" was made, i.e., until the check was finally paid by the payor bank (here, Bank of America) (*see* UCC 4-201 [1]; 4-211, 4-213; *Hanna v First Natl. Bank of Rochester, supra*; *Roslyn Sav. Bank v Jude Thaddeus Glen Cove Mar.*, 266 AD2d 198 [1999]; *Allen v Carver Fed. Sav. & Loan Assn.*, 123 Misc 2d 704 [1984]). Until such time, the risk of non-collection remained with Mr. Call and any settlement made on the check by the defendant bank was provisional only (*see* UCC 4-201 [1]; *Hanna v First Natl. Bank of Rochester, supra*; *Roslyn Sav. Bank v Jude Thaddeus Glen Cove Mar., supra*; *Allen v Carver Fed. Sav. & Loan Assn., supra*; *Chase v*

*Morgan Guar. Trust Co.*, 590 F Supp 1137 [1984]). Accordingly, when final settlement was not made on the check by the payor bank due to discovery of the counterfeit, the defendant bank was entitled to revoke the provisional settlement made on the check and charge back Mr. Call's account or obtain a refund from Mr. Call for the funds drawn on the check (*see* UCC 4-212 [1]; *Hanna v First Natl. Bank of Rochester, supra*; *Roslyn Sav. Bank v Jude Thaddeus Glen Cove Mar., supra*; *Long Is. Natl. Bank v Zawada*, 34 AD2d 1016 [1970]; *Allen v Carver Fed. Sav. Bank, supra*; *see also Chase v Morgan Guar. Trust Co., supra*; *Yoder v Cromwell State Bank*, 478 NE2d 131 [Ind App 1985]; *Southside Natl. Bank v Hepp*, 739 SW2d 720 [Mo 1987]). Thus, Mr. Call's transfer of assets and execution of the promissory note were supported by consideration (*see Weiner v McGraw-Hill, Inc.*, 57 NY2d 458 [1982]; *Umscheid v Simnacher*, 106 AD2d 380 [1984]).

Nor do we find that this statutory allocation of risk should be altered by the defendant bank's alleged representation to Mr. Call on March 15, 2001, that the check had "cleared" (*see Allen v Carver Fed. Sav. & Loan Assn., supra*; *Chase v Morgan Guar. Trust Co., supra*; *see also Southside Natl. Bank v Hepp, supra*; *U.S. Fid. & Guar. Co. v Federal Reserve Bank of N. Y.*, 590 F Supp 486 [1984], *affd* 786 F2d 77 [1986]; *Isaacs v Chartered New England Corp.*, 378 F Supp 370 [1974]). The term "cleared" is not employed in the UCC and, as commonly used, is not the equivalent of "final settlement." Indeed, although Mr. Call apparently assumed such, he did not allege that this was a result of any inquiry with or representation to that effect by the defendant bank.

In contrast, the plaintiff Shirley Call was not an owner of the account into which the check was deposited and did not withdraw any funds on the check. Thus, the defendant bank had no basis to charge back or obtain a refund for the wired money from Mrs. Call. However, the defendant bank's forbearance of legal action against Mr. Call was sufficient to constitute consideration for Mrs. Call's transfer of assets and execution of the promissory note (*see Joab Commercial Laundries v Reeder*, 159 AD2d 489 [1990]).

Further, the defendant bank submitted competent evidence in admissible form, including the affidavit of the bank manager who dealt with the plaintiffs during the transfer of assets and execution of the promissory note at issue, sufficient to demonstrate a prima facie entitlement to judgment as a matter of law dismissing the plaintiffs' allegations that such transactions should be set aside due to fraud in the inducement, duress,

undue influence, overreaching, lack of mental capacity, or breach of fiduciary duty.

In opposition to this prima facie showing, the plaintiffs failed to raise a triable issue of fact that there was a knowing misrepresentation of material fact by the defendant bank upon which they reasonably relied to their detriment in transferring the assets and/or executing the promissory note, or in undertaking any other relevant course of action (*see* CPLR 3016; *Graubard Mollen Dannett & Horowitz v Moskovitz,* 86 NY2d 112 [1995]; *Lanzi v Brooks,* 43 NY2d 778 [1977]). Further, they failed to raise a triable issue of fact that they were not capable of comprehending and understanding the nature of the challenged transactions due to prescription medications that they were taking at the time, or for any other reason (*see Ortelere v Teachers' Retirement Bd. of City of N.Y.,* 25 NY2d 196 [1969]; *Smith v Comas,* 173 AD2d 535 [1991]). Finally, they failed to raise a triable issue of fact that their relationship with the bank was more than that of debtor and creditor, and that there existed a fiduciary relationship between the parties based on the defendant bank's knowledge that Mr. Call had been the victim of a lottery scam a year prior, or for any other reason (*see Bennice v Lakeshore Sav. & Loan Assn.,* 254 AD2d 731 [1998]; *Wiener v Lazard Freres & Co.,* 241 AD2d 114 [1998]; *Chimento Co. v Banco Popular de Puerto Rico,* 208 AD2d 385 [1994]).

However, Mrs. Call did raise a triable issue of fact whether her transfer of assets and execution of the promissory note were the product of duress, undue influence, or overreaching by the defendant bank (*see 805 Third Ave. Co. v M.W. Realty Assoc.,* 58 NY2d 447 [1983]; *Austin Instrument v Loral Corp.,* 29 NY2d 124, 130 [1971]; *Adams v Irving Natl. Bank of N.Y.,* 116 NY 606 [1889]; *Matter of Wilomovsky v Caples,* 172 AD2d 615 [1991]; *Polito v Polito,* 121 AD2d 614 [1986]; *Gerstein v 532 Broad Hollow Rd. Co.,* 75 AD2d 292 [1980]). Mrs. Call stated in affidavits and testified at her deposition that, just prior to her transferring assets and executing the promissory note, she first learned not only of the counterfeit check and the corresponding $74,000 debt, but also that her husband had been the victim of prior lottery scams which had resulted in losses of approximately $130,000. Further, the bank manager yelled at her, and told her that wired money had to be repaid "immediately" or the bank manager would lose her job and there would be "big trouble," which Mrs. Call apparently understood to include the pursuit of criminal proceedings against Mr. Call (*see Adams v Irving Natl. Bank of N.Y., supra; Triad Distribs. v Conde,* 56 AD2d 648 [1977]). This, she asserted, exacerbated her concerns about the

health of Mr. Call, who was then scheduled for an angiogram the following week. In light of this testimony and, inter alia, the fact that Mrs. Call had no direct liability for the $74,000 debt, there are triable issues of fact whether her transfer of assets and execution of the promissory note were the product of duress, undue influence, or overreaching by the defendant bank.

Mr. Call is not similarly situated. Given his prior victimization or victimizations by lottery scams, of which he obviously had knowledge, and the clearly suspicious manner in which the subject check came into his possession, Mr. Call was or should have been aware that the check might not be honored. This would provide one explanation why Mr. Call deposited the check in the Chester branch of the defendant bank, which was an approximately 20-minute drive from his home, when another branch of the bank, at which a manager with knowledge of his prior victimization in a lottery scam worked, was "an easy walk" away; and why he sought to wire transfer money from the check the very day of deposit, a request, given the out-of-state origin of the check, which everyday banking experience would suggest was unlikely to be honored if scrutinized. Further, Mr. Call clearly had direct liability to repay the wired money as the owner of the account into which the money was paid and the person who drew funds on the check. In sum, Mr. Call failed to raise a triable issue of fact that his transfer of assets and execution of the promissory note were the product of duress, undue influence, or overreaching by the defendant bank.

Finally, we note, the plaintiffs did not allege a cause of action sounding in negligence (*see generally Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., supra* at 348-349). Ritter, J.P., S. Miller, Luciano and Townes, JJ., concur.