One Credit Union v. Chico et. al., Nos. 506-10-12 Wmcv and 507-10-12 Wmcv (Wesley, J., Oct. 31, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**SUPERIOR COURT**

| | |
|---|---|
| **One Credit Union,**<br>**Plaintiff,**<br><br>**v.**<br><br>**Christopher Chico, administrator of**<br>**the estate of Gregory S. Chico, and**<br>**Geri Lynn Baitz Chico,**<br>**Defendants.** | **Windham Unit, Civil Division**<br>**Docket No. 506-10-12 &**<br>**507-10-12 Wmcv** |

**OPINION & ORDER**

On October 17, 2012, the Plaintiff brought these actions against Christopher Chico, administrator of the estate of Gregory Chico ( "the estate"), and against the former wife of Gregory Chico, Geri Lynn Baitz Chico, seeking to recover proceeds of a dishonored check deposited with it.[1] Plaintiff is represented by Attorney Christopher S. Dugan. On November 15, 2012, represented by Attorney Melvin D. Fink, the estate filed its answer and counterclaims. There are also cross-claims by Geri Lynn Baitz Chico against the estate and Farm Family Casualty Insurance Co. which have not yet been resolved.[2] On June 3, 2013, Plaintiff filed a motion for summary judgment as to its complaint against the estate, also seeking judgment as a matter of law as to the estate's counterclaims. Pursuant to the parties' stipulation, Defendant was granted until Oct. 2 to file his response to the motions for summary judgment, in order to allow additional discovery.[3]

**FACTS**

The summary judgment record establishes the following relevant facts, taken in the light most favorable to the estate, the non-moving party with respect to the motion against it:[4]

On or about November 28, 2011, Gregory Chico deposited a check in the amount of $90,874.41 into a "Share Account" at the Plaintiff's banking institution ( "the bank"). The check, from Farm Family Casualty Insurance Co. ("the insurance company"), was proceeds of an

---

[1] Doc. 507-10-12 is a complaint for recovery of an overdraft on an account after setoff against the amount of the dishonored check. Doc. 506-10-12 is a foreclosure complaint arising from an alleged default resulting from the same setoff. The Court consolidated the two actions by order issued April 25, 2013.

[2] These claims have not become the subject of any request for summary judgment, and they are not addressed in this opinion. On Oct. 21, 2013, Plaintiff and Defendant Geri Lynn Baltz Chico stipulated to dismissal of all claims each had made against the other in Doc. 507-10-12 Wmcv.

[3] Plaintiff moved for an evidentiary hearing, which is made unnecessary by the resolution of the motions in its favor based on uncontested facts. V.R.C.P.78(b)(2); see, also, *State v Heritage Realty*, 137 Vt. 425 (1979)(hearing on motion for summary judgment solely to determine whether a genuine issue exists as to any material fact).

[4] *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476 (in summary judgment evaluation, non-moving party afforded "the benefit of all reasonable doubts and inferences").

insurance settlement due to a fire at the home of Mr. Chico and his then-wife Geri Lynn Baitz Chico ("Mrs. Chico") and was made out to their order jointly. Plaintiff's policies permitted it to accept a check made out to more than one person with the endorsement of just one of the parties to whom it was payable. They also permitted it to require both endorsements. The check itself contained language stating that both endorsements were required.

On the same date as the deposit, Mr. Chico withdrew $90,874.41 from the Share Account, obtaining a bank check in his name only for that amount. He deposited that check with another bank in another account.

On or about February 9, 2012, the insurance company's check was returned to the Plaintiff from Empire Bank, dishonored for lack of Mrs. Chico's endorsement.

On February 10, 2012, Plaintiff sent Mr. and Mrs. Chico a notice of insufficient funds to cover the returned item. Plaintiff subsequently debited the Share Account in the amount of the dishonored check, setting off the existing $46,360.62 then in the account, and resulting in an overdrawn amount of $44,513.79.

In August 2012, Mr. Chico died. This action followed.

The insurance company remains prepared to pay the settlement, which has not been disbursed due to the check being dishonored.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); *King v. Gorczyk*, 2003 VT 34, ¶ 7, 175 Vt. 220. The movant bears the burden of proof, and "facts asserts by the opposing party, if supported by affidavits or other evidentiary material, are regarded as true." *Cavanaugh v. Abbott Lab.*, 145 Vt. 516, 520 (1985) (quotation omitted).

There is no meaningful dispute as to the following: Mr. Chico brought a check for $90,874.41 made out to Mrs. Chico and himself to a branch of Plaintiff's operation. With only his signature, the check was deposited, and Mr. Chico then obtained a check made out only to him for substantially the same amount. The first check's issuer, Empire Bank, bank for the insurance company, subsequently dishonored the check because it had only been signed by one of the named parties. As a result, Mr. Chico obtained $90,874.14 of Plaintiff's money, for which Plaintiff was not reimbursed, although Plaintiff had accepted a promise to pay that amount in the form of the check deposited by Mr. Chico. Plaintiff offset $46,360.62 of its loss from the bank account of Mr. and Mrs. Chico. Thus, in essence, Mr. Chico converted $44,513.79 of the bank's money, and in turn may have caused the seizure of funds belonging at least in part to his then-wife when, due to his solo actions, the bank charged back money held in their names jointly.

The estate argues extensively regarding the bank's authority to accept a single endorsement on a check made out to more than one party, and regarding its claim that the check should not have been dishonored. As discussed below, however, these matters do not create any

dispute as to *material* facts. The undisputed and most salient facts remain that the bank was in no way responsible for the check being dishonored, and that the bank paid out $90,874.41 based upon Mr. Chico's purported deposit of that same amount in the check later dishonored. The estate does not challenge these underlying operative facts. While there is some dispute as to the circumstance of the deposit of the original check, there is agreement that Mr. Chico did present the check for deposit with his signature only, and then drew on the check, obtaining its full value. As a result, given that the operative facts are agreed upon, summary judgment is appropriate on the issue of the estate's liability to Plaintiff as there is only a question of law as to whether the bank's acceptance of the check endorsed by just one party makes it liable for any damages suffered as a result of its action. The Court finds that it does not.

The check which Mr. Chico submitted for deposit was a negotiable instrument within Article 3 of the Vermont Uniform Commercial Code ("UCC"). 9A V.S.A. § 3-104. The estate acknowledges that before submitting the check for deposit, Mr. Chico signed it on the back in the area designated for endorsement. This qualifies Mr. Chico as an "endorser" within the meaning of Article 3. 9A V.S.A. § 3-204(b).

The check was subsequently dishonored due to the lack of Mrs. Chico's endorsement. At this point, Mr. Chico became liable for the amount of the check as the endorser. 9A V.S.A. § 3-415(a)("[I]f an instrument is dishonored, an endorser is obliged to pay the amount due on the instrument"). See also *Farmers Production Credit Ass'n v. Arena*, 145 Vt. 20, 24 (1984)("When defendant endorsed the note without qualification, he undertook, absent evidence of any other understanding between the parties, the obligations of a maker").

This conclusion is consistent with 9A V.S.A. 4-214(a), which provides: "[i]f a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or a longer reasonable time after it learns the facts it returns the item or sends notification of the facts."

9A V.S.A. § 4-214(a).

The settlement of the check was provisional prior to its acceptance or rejection by the bank upon which it was drawn. Therefore, the risk of loss remained on the depositor, Mr. Chico. 9A V.S.A § 4-201(a); *Call v. Ellenville Nat'l Bank*, 5 A.D.3d 521, 523-524 (N.Y. App. Div, 2004). The estate's contention that the check "cleared" is irrelevant, as it neither reflects the established facts, nor is "cleared" in the sense urged by the estate a term used within the relevant UCC provisions.[5] *Banknorth N.A. v. Zeeman*, No. 173-3-04, at *J, Vt. Super, Dec. 20, 2004; *Call*, 5 A.D.3d, at 524. Therefore, Plaintiff is entitled to a judgment against the estate for the full

---

[5] Even if the estate's argument about the check having "cleared" is construed as an argument that endorser liability is cut off where "a draft is accepted by a bank after an endorsement is made," 9A V.S.A. § 3-415(d), the theory fails because the Plaintiff's acceptance of the check for deposit was not "acceptance" within the meaning of the statutory scheme. 9A V.S.A. § 3-409(a).

3

amount; any other result would be inequitable and would constitute unjust enrichment. *Legault v. Legault*, 142 Vt. 525, 531 (1983).

The estate challenges the seizure of funds from the bank account in its counterclaim, calling it conversion. If the seizure was valid, the amount seized would offset in part that due from the estate to Plaintiff. As Plaintiff has demonstrated, its membership agreement with Mr. and Mrs. Chico entitled it to such offsets in the case of an overdrawn account. Its position is reinforced by 9A V.S.A. § 4-401(a), which provides that "[a] bank may charge against the account of a customer an item that is properly payable from the account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." It is clear that Mr. Chico was, and the estate is, liable to the bank of the overdraft. The terms of the agreement between Plaintiff and Mr. and Mrs. Chico are legally inconsistent with the estate's claim of conversion or a deceptive act. Thus, summary judgment will enter for Plaintiff with respect to the estate's counterclaims for conversion and consumer fraud.

**WHEREFORE** it is hereby **ORDERED:** The motion for summary judgment on the Plaintiff's claims against the estate is **GRANTED**. Summary judgment on the estate's counterclaims against the Plaintiff is **GRANTED** in favor of the Plaintiff.

The Court will set the matter for a 30 minute status conference to address the status of remaining claims in each of the consolidated cases.

Dated at Newfane this            day of                    , 2013.


_____
John P. Wesley
Civil Division Judge